In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1643

LONZIA CASTEEL,

Plaintiff-Appellant,

v.

EXECUTIVE BOARD OF LOCAL 703 OF THE
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
THOMAS W. STIEDE, KEITH LLOYD, BOB POORE,
JOHN COBB, CHUCK MURDOCK, BILL SHOEMAKER,
and DAN SCHNUR,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 8264--Charles R. Norgle, Judge.

Argued September 25, 2001--Decided November 15, 2001

Before ROVNER, DIANE P. WOOD, and EVANS,
Circuit Judges.

EVANS, Circuit Judge.  This case involves
a challenge to the overtime provisions of
a labor contract under the Age
Discrimination in Employment Act. Lonzia
Casteel is a truck driver who, prior to
1998, was employed by Mavo Leasing, Inc.
and made deliveries for Dominick's Finer
Foods, Inc. Since that time, Dominick's
has became his actual employer. Casteel
works out of Dominick's Northlake,
Illinois, facility where he is first on
the seniority list for Northlake drivers,
who are represented by Local 703 of the
International Brotherhood of Teamsters.
During all time periods relevant to this
suit, Mavo and the Union operated under a
collective bargaining agreement, which
Dominick's has adopted.

Dominick's drivers work one of two main
shifts. There is a Monday to Friday shift
and a Tuesday to Saturday shift, each
with various starting times. Accordingly,
there are two shifts working on Tuesday
through Friday, but only one shift
working on Monday and Saturday. There are
a few possibilities for overtime. First,
drivers can work a sixth day. For those

drivers on the Monday to Friday shift, such as Casteel, the sixth day is Saturday. Second, drivers might get "early starts." Early starts occur when drivers are asked to report before their usual starting time. Third, a driver might be assigned a "drop," or drop load. Drops refer to special loads in which a driver drops off a trailer that he does not unload. A drop is automatically worth one hour of overtime pay (no matter when it is completed) and is, therefore, considered a choice assignment. Fourth, there may be work on Sundays or holidays. Drivers are paid time-and-a-half for their overtime on the sixth day, early starts, or drops. Drivers needed on Sunday or holidays are paid double time.

The present case concerns sixth-day overtime opportunities, such as early starts and drops./1 Overtime opportunities on the sixth day are currently governed by "shift seniority." Under shift seniority, overtime opportunities are first allotted by seniority to those drivers on the Tuesday to Saturday shift, the idea being that these drivers should have the first option on overtime opportunities attached to their normal Saturday workday. Casteel believes that "master seniority" should extend to sixth-day overtime opportunities. Master seniority, which governs the distribution of overtime assignments on Tuesday through Friday (when both shifts are working), Sundays and holidays, allots overtime opportunities by seniority on the combined shift list. Casteel would have a greater opportunity for Saturday overtime opportunities under master seniority, in which he ranks first, than under shift seniority, in which he has to wait behind all of the Tuesday to Saturday drivers.

Shift seniority with regard to sixth-day overtime opportunities was not always the rule. When Casteel was a union steward during part of 1992 and 1993, he instituted master seniority for sixth-day overtime opportunities. The policy was changed in June of 1993, after new local union leadership was elected. Tim Welch, one of the new union stewards, informed Casteel both before and after the change took place that the Union was switching back to shift seniority. In April 1994, Casteel challenged the policy in a grievance. He lost.

After stewing for a good while, Casteel filed a charge with the EEOC on November 21, 1996. He alleged that the shift seniority policy constituted age discrimination (Casteel is over 40), race discrimination (he is an African-American), and that the Union violated its duty of fair representation under sec. 301(a) of the Labor Management Relations Act. 29 U.S.C. sec. 185(a). The EEOC issued a right to sue letter. Casteel and four other drivers filed the present complaint against the Union and the board members on November 26, 1997./2 The complaint stated a claim only under the Age Discrimination in Employment Act./3 29 U.S.C. sec. 621 et seq. It alleged that the change from master to shift seniority with regard to sixth-day overtime opportunities was adopted to discriminate against older workers and/or had a disparate impact on them. The district judge granted summary judgment to the Union, finding that Casteel's EEOC charge and complaint were both untimely. Casteel appeals that ruling.

Although things so far are fairly clean, we must comment briefly on another point. Apparently during discovery Casteel lit on a few other theories of harm and, by the time summary judgment time rolled around, he added claims that the Union disregarded and misapplied master seniority on Sundays and holidays (in particular Thanksgiving), that it misapplied shift seniority on Mondays, that it waived Department of Transportation restrictions for younger drivers, thus allowing them to work on Sundays, and that it manipulated the distribution of drops on weekdays, Saturdays, and early starts to advantage younger drivers.

But our use of "added" may be too generous. Casteel never amended his complaint to include these claims. The district judge appears not to have addressed them in his opinion. On appeal, Casteel claims that the district judge improperly ignored them; the Union claims that they were subsumed in the district judge's ruling that Casteel's case was untimely.

In the interest of avoiding institutional exasperation (perhaps it's

too late), we consider Casteel's claims in two classes: first, his clearly presented claim that the Union intentionally discriminated against him because of his age in June of 1993 by readopting shift seniority for sixth-day overtimes opportunities; and second, Casteel's other purported claims.

The district judge properly found the first claim time-barred. Under the ADEA, a plaintiff must file an administrative charge within 180 days after the alleged unlawful discriminatory practice occurred, unless the plaintiff first files with a state agency in a deferral jurisdiction, in which case the plaintiff has 300 days to file the charge. 29 U.S.C. sec. 626(d); 29 U.S.C. sec. 633(b). A failure to file a timely charge will bar a later suit. Chakonas v. City of Chicago, 42 F.3d 1132, 1135 (7th Cir. 1994). Illinois is a deferral jurisdiction. The parties and the district judge assumed that Casteel is entitled to the 300-day period (because the longer time period helps him not at all), so we will do the same.

The first issue is what event triggered the running of the statute of limitations. The Union claims that the statute began to run in June of 1993, when the Union switched back from master to shift seniority with regard to sixth-day overtime opportunities. Casteel claims the overtime policy is a continuing violation that starts the clock anew whenever it is applied to his disadvantage. If it was 1990, we would likely have a clear answer. In Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989), the Supreme Court considered a Title VII gender discrimination challenge to a facially nondiscriminatory seniority system that was allegedly adopted with discriminatory intent. The Court held that in such a case the statute of limitations begins to run at the time of the system's adoption, not when the policy is applied. Id. at 911. A facially discriminatory policy, on the other hand, discriminates anew every time it is applied and thus begins the running of a new clock. Id. at 912 n.5.

In the present case, Casteel cannot show that the overtime policy facially discriminates against older workers. Cf. id. (noting that a facially

discriminatory seniority system would, for example, give "men twice the seniority that women receive for the same amount of time served"). His claim rests on showing that the Union's facially neutral overtime policy was adopted with a discriminatory motive./4 Accordingly, if Lorance's reasoning applies, it bars Casteel's suit because he filed his EEOC charge on November 21, 1996, 3 years and 5 months after the Union readopted shift seniority for sixth-day overtime opportunities.

The only mystery to this case is provided by the fact that Lorance was abrogated when Congress passed the Civil Rights Act of 1991. Congress provided that "with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this title [42 USCS sec.sec. 2000e et seq.]," the unlawful employment practice occurs when the seniority system is adopted, when an individual becomes subject to the system, or when an individual is injured by its application. 42 U.S.C. sec. 2000e-5(e)(2). The question is whether this language undermines the reasoning of Lorance in the ADEA context. We have previously stated that Lorance's reasoning remains persuasive in the context of other discrimination statutes. See Huels v. Exxon Coal USA, Inc., 121 F.3d 1047, 1050 n.1 (7th Cir. 1997) (ADA); Kennedy v. Chemical Waste Mgmt., Inc., 79 F.3d 49, 51-52 (7th Cir. 1996) (ADA). Casteel has made no attempt to divert us from our course. Indeed, busy finding new claims, he has not even briefed the issue. Partly for that reason but most importantly because it makes good sense, we apply Lorance's reasoning to Casteel's ADEA challenge to the Union's overtime policy. The statutory period in which Casteel could challenge the policy began to run in June of 1993. Because he did not file his charge until 1996, it is untimely.

Because the requirement for filing a charge in the ADEA context is not jurisdictional, however, the period may be tolled by equity. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451-52 (7th Cir. 1990). Two doctrines might apply: equitable estoppel or equitable tolling. Equitable estoppel applies "if the defendant takes active steps to prevent the plaintiff from suing in

time." Id. at 450. To invoke equitable tolling, a plaintiff must show that "he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim." Id. at 452. Casteel makes no claim that the Union prevented or hindered him from bringing suit, so equitable estoppel does not apply. Moreover, Casteel cannot assert equitable tolling. He learned of the switch to shift seniority before and after the switch was made; union steward Welch discussed it with him. Indeed, Casteel grieved the policy in April 1994. For some reason, he did not initiate the present proceedings challenging the shift seniority system as age discriminatory until 1996. His charge is untimely and summary judgment on his claim was properly granted.

Now back to the "added" claims. In his opposition to summary judgment, Casteel (we repeat) alluded to claims that the Union disregarded and misapplied master seniority on Sundays and holidays (in particular Thanksgiving), that it misapplied shift seniority on Mondays, that it waived Department of Transportation restrictions for younger drivers, and that in some cases it manipulated the distribution of drops on weekdays, Saturdays, and early starts to advantage younger drivers. The Union argues that these claims were subsumed in the untimeliness ruling made by the district judge. We agree.

Although Judge Norgle's opinion does not specifically address these "claims," they are all part and parcel of the overriding contention that the shift seniority system runs afoul of the Age Discrimination in Employment Act which was, as we have said, the only claim to appear in the complaint. Accordingly, we will affirm the grant of summary judgment to the Union.

FOOTNOTES

/1 "Sixth-day overtime opportunities" do not refer to the availability of sixth-day (overtime) work generally but rather to opportunities, such as early starts and drops, that come available on a driver's sixth day.

/2 None of the other four drivers had filed an EEOC charge and their claims were dismissed.

/3 The complaint alluded to the fact that the Union's policy shift also may have been motivated by a desire to retaliate against Casteel for opposing the Union leadership in earlier elections. The Union carried Casteel a few rounds by noting that this language possibly stated a claim for violation of the Union's duty of fair representation. (The district judge also alluded to this in his opinion.) Casteel seems to have let it pass. He does not mention a sec. 301(a) claim in his brief, so if one is lurking here, it is waived.

/4 Casteel's complaint also alleges a disparate impact claim under the ADEA. Such a theory is not available in this circuit. Rummery v. Illinois Bell Tel. Co., 250 F.3d 553, 559 n.5 (7th Cir. 2001); Adams v. Ameritech Servs., Inc., 231 F.3d 414, 422 (7th Cir. 2000).