UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2005
Decided January 26, 2006

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-3897

| | |
|---|---|
| NICOLE SALADINO,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>ENVIROVAC, INC.,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Western Division.<br><br>No. 02 C 50323<br><br>Philip G. Reinhard,<br>*Judge.* |

## O R D E R

In this appeal Nicole Saladino challenges the district court's grant of summary judgment for her employer, Envirovac, Inc., on her claim that the company failed to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* We affirm.

The following facts are undisputed. Envirovac hired Saladino as a temporary customer service clerk in 1999. Three months later she became a permanent employee and worked as an order-processing clerk. Her immediate supervisor was

Contracts Department Manager Dennis Tritt and, during the period of time relevant to this appeal, Tritt reported to Director of Business Planning Doug Wallace.

Saladino's health problems began early in 2001. She was admitted to a hospital once in January because she was tired and "felt kind of out of whack," missed several days of work in January and February because of abdominal pain and other undisclosed maladies, and visited a hospital (but was not admitted) four times in the summer of 2001 because of unspecified symptoms. In June 2001 her previously undiagnosed ailments apparently worsened and she began having seizures, which the record also characterizes as pseudo-seizures. Under its Family Medical Leave policy, Envirovac granted her 8 to 10 weeks of leave starting in July. Although her physicians could not identify the cause of her seizures, her psychologist diagnosed her with anxiety and bipolar disorders and stated that she could not return to work until December. In September Saladino notified Envirovac's Human Resources Manager Nancy Kolar of the diagnosis and requested an extension of her leave. But on October 8, before her leave expired, her psychologist released her to return to half-day work.

The same day that Saladino's psychologist authorized her return, she asked Kolar to accommodate her need to work only part-time. Wallace and Tritt, though, telephoned Saladino at her home the next day, October 9, to notify her that her position had been eliminated in a reduction-in-force ("RIF"), which reduced the total number of employees from 130 to 120. Saladino, the least-senior clerical worker in the Contracts Department, was selected for release by Wallace.

Envirovac and Saladino dispute the circumstances surrounding the RIF. Envirovac suggests that budgetary concerns motivated the RIF, that the employees released were selected based on lack of seniority, and that Wallace made the decision to release Saladino in September. Saladino, though, argues that each employee released had suffered from recent health problems. She also asserts that the decision to release her occurred only after she requested accommodation.

Saladino filed a complaint alleging a hostile work environment and retaliation for reporting sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and disability discrimination (due to her pseudo-seizures and anxiety and bipolar disorders), in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Envirovac moved for summary judgment on the claims and Saladino, in her response to the motion, clarified that she intended to press a distinct claim premised on Envirovac's failure to accommodate her disability.

Saladino relied on circumstantial evidence to support her assertion that Envirovac decided to release her only after receiving her request for accommodation. First she highlighted the timing of events: she requested accommodation on October 8 and was notified of her release the following day. Second she pointed to two lists of employees slated for termination which were prepared by Kolar. The first document denoted those employees released in the RIF with asterisks and did not contain a mark by Saladino's name. Although its drafting date is uncertain, Saladino implied that it was created before the October 9 telephone calls notifying her of her release. The second list, delivered to Saladino on October 10, did contain a mark by her name. She interpreted these two lists to mean that she was not selected for release by Envirovac until after she requested accommodation. Finally she argued that Envirovac's refusal to discuss the possibility of part-time employment was evidence of its unwillingness to employ disabled individuals. In response Envirovac argued that Wallace, the decision-maker responsible for Saladino's release, decided to released her in September 2001 without knowing of her disability. Envirovac also suggested that Saladino failed to show that the seniority-based RIF was motivated by discrimination.

The district court granted Envirovac's motion for summary judgment. The court found that the series of events alleged by Saladino did not create an "issue of material fact" and that "temporal proximity [was] not enough" without evidence to challenge Envirovac's assertion that Wallace decided in September to release her as part of the RIF. Finally the court found that it was unnecessary for Envirovac to accommodate Saladino's request to work part-time because Wallace had already decided by that time to terminate her.

We review a grant of summary judgment de novo. *See Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005). Saladino now argues that the district court erred by discounting her circumstantial evidence of discrimination—the timing of her request for accommodation and the two lists created by Kolar—which she suggests should have been sufficient to survive Envirovac's motion for summary judgment. She also argues that Envirovac's failure to discuss with her the possibility of accommodation was further evidence that it violated the ADA.

The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). To state a prima facie case of failure to accommodate, Saladino must show that: (1) she was disabled, (2) Envirovac was aware of her disability, (3) she was qualified for her job, and (4) her disability caused the adverse employment action. *See Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999). Envirovac conceded the first and third prongs, and the district court determined that Saladino provided sufficient evidence to establish the second prong. Though Envirovac can—as it did

in its brief to this court—defend the district court's grant of summary judgment on any ground, including the second prong, *see Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481 (1976); *Data Cash Systems, Inc. v. JS&A Group, Inc.*, 628 F.2d 1038, 1041 (7th Cir. 1980), we will focus—as Saladino did in her brief—on the fourth prong.

The ADA does not require that an employer accommodate a disabled employee to the detriment of other senior employees if the disabled employee is released under a non-discriminatory, seniority-based layoff policy. *See Brown v. Illinois Central R.R. Co.,* 254 F.3d 654, 668 n.14 (7th Cir. 2001) (ADA does not disturb seniority-based collective bargaining agreement); *Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 596 (7th Cir. 1999); *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041, 1051 (7th Cir. 1996); *see also Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998) (seniority system need not be based on collective bargaining agreement). A plaintiff may overcome a defendant's reliance on a seemingly neutral seniority system by demonstrating that the system is purposefully discriminatory, *see, e.g.*, *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 560 (1977); *Casteel v. Executive Bd. of Local 703 of Intern. Broth. of Teamsters,* 272 F.3d 463, 466-67 (7th Cir. 2001).

Saladino has not shown that Envirovac's seniority-based RIF policy was purposefully discriminatory, and thus Envirovac's reliance on the policy precludes Saladino's claim of discrimination. She urges that her circumstantial evidence regarding the timing of Envirovac's decision to release her proved that Envirovac's decision was motivated by discrimination. A "telling temporal sequence" may support a causal connection between a disability and an adverse employment action, but it "is not a magical formula which results in a finding of a discriminatory cause" without other circumstantial evidence from which to infer an improper motive. *Foster*, 168 F.3d at 1034. Even if we interpreted the two RIF lists created by Kolar as establishing that Wallace released Saladino only after she requested accommodation, her claim of discrimination is still based only on the timing of events; she has not pointed to evidence of any discriminatory motive. Thus she has not refuted the neutral RIF criterion asserted by Envirovac and consequently has failed to demonstrate that the company's action was motivated by discrimination. And, because she was selected for release based on her lack of seniority, Envirovac was not under an obligation to discuss accommodation with her.

Accordingly, we AFFIRM the decision of the district court.