Paul HOLOWECKI, Patricia Kennedy, Donna M. Lewis, Charles Moncalieri, Phyllis Nelson, Andy Kubicki, Elizabeth Tucker, Steven Almendarez, Frank J. Martinez, Kelly L. Martinez, Kevin McQuillan, Kenneth G. Mutch-

ler, George Robertson, Nancy Thompics, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

**FEDERAL EXPRESS CORPORATION, Defendant–Appellee.**

Docket No. –43376–CV.

United States Court of Appeals, Second Circuit.

Argued: May 24, 2005.

Decided: March 8, 2006.

David L. Rose (David M. Wachtel, on the brief), Rose & Rose, P.C., Washington, DC, for Plaintiffs–Appellants.

R. Jeffery Kelsey, Memphis, TN, for Defendant–Appellee.

Before: KEARSE, CALABRESI, and POOLER, Circuit Judges.

POOLER, Circuit Judge.

Appellants, who are all at least 40 years of age and are currently or were formerly employed as couriers for appellee Federal Express Corporation ("FedEx"), filed an April 30, 2002, complaint on behalf of themselves and other similarly situated FedEx couriers, claiming that FedEx had engaged in a pattern and practice of employment procedures that discriminate based on age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the laws of several other states. The United States District Court for the Southern District of New York (McKenna, *J.*) dismissed the claims as time-barred, concluding that each named plaintiff failed to comply with the ADEA's time limit requirements under 29 U.S.C. § 626(d).

We disagree with the district court's dismissals of the plaintiffs' claims. Specifically, we hold that plaintiff Patricia Kennedy's Intake Questionnaire and accompanying verified affidavit, filed with the Equal Employment Opportunity Commission ("EEOC"), constituted an EEOC "charge" that satisfactorily fulfilled the ADEA's exhaustion requirements even though the EEOC never notified, or investigated, the employer. Furthermore, we conclude that Kennedy's EEOC charge was sufficient to permit the eleven named plaintiffs that *never* filed EEOC charges to take advantage of the "single filing" or "piggybacking" rule and thereby satisfy the ADEA's exhaustion requirements.

Finally, with respect to plaintiffs George Robertson and Kevin McQuillan, two individuals who *did* individually file administrative charges and received right-to-sue letters, we conclude that the district court erred in determining that these plaintiffs did not file their charges within 300 days after the alleged unlawful practice occurred, as is required by 29 U.S.C. § 626(d). We remand, however, for the district court to decide in the first instance whether the complaint, fleshed out by Robertson's affidavit, was sufficient to withstand a motion dismiss based on the ADEA's requirement that a claimant who receives a right-to-sue letter must bring suit in federal court within 90 days of receipt of the letter. *See* 29 U.S.C. § 626(e). Accordingly, we reverse in part, vacate in part, and remand for further proceedings in accordance with this opinion.

## BACKGROUND

This case requires us to consider various time limits imposed on plaintiffs seeking to sue their employer under the ADEA. Appellants (also referred to as "Holowecki plaintiffs"), residents of several states, filed an April 30, 2002, complaint on behalf of themselves and other similarly situated FedEx couriers. The complaint alleged, *inter alia,* that, through policies initiated in 1994 and 1995—such as "Best Practices Pays" ("BPP") and "Minimum Acceptable Performance Standards" ("MAPS")—and through a pattern and practices that continued thereafter, FedEx had discriminated based on age. The Holowecki plaintiffs contended that BPP, MAPS, and related policies were intended to encourage older workers to leave the company before they wished to retire and to mask FedEx's efforts to terminate older workers based on age discrimination.

According to the complaint, for instance, after the initial implementation of the BPP and MAPS, FedEx continued to increase performance goals and apply these new goals in a way that discriminated against older couriers. For instance, at first, FedEx required that a courier work with her supervisor to agree upon "a reasonable and safe number of stops per hour on the courier's route that could reasonably be achieved." If the courier achieved this goal, she would receive enhanced pay for one pay period. "Over time, however, [FedEx] treated the goals as the minimum acceptable number of stops that older couriers were required to make to retain their positions.... [F]ailure of a courier to achieve that number was grounds for a 'performance reminder' and then disciplin-

ary action up to and including termination." Older couriers, according to the complaint, were more often "written up" for occasional failures to meet these goals and "younger couriers were rarely disciplined for such matters." Furthermore, pursuant to these policies, any absence of more than 90 days became grounds for termination from employment. The complaint alleged a series of additional discriminatory practices based on age and claimed that these policies led to the termination and constructive discharge of a disproportionately high percentage of older couriers.

The district court dismissed the Holowecki plaintiffs' complaint without reaching the merits, ruling that all fourteen named plaintiffs failed to satisfy the ADEA's time limit requirements, *see* 29 U.S.C. § 626, and declining to exercise supplemental jurisdiction over plaintiffs' state law claims. Under 29 U.S.C. § 626(d) ("Section 626(d)"), an aggrieved person must file an EEOC charge at least 60 days *prior to* initiating an ADEA suit in federal court. In addition, if the allegedly discriminatory act occurs in a "deferral state," a state that has its own age discrimination law and its own age discrimination remedial agency, the charge must be filed within the earlier of 300 days after the alleged unlawful practice occurred or thirty days after a complainant receives notice of the termination of state law proceedings. *See* 29 U.S.C. § 626(d); *Id.* § 633(b); *Hodge v. New York Coll. of Podiatric Med.,* 157 F.3d 164, 166 (2d Cir.1998). It is undisputed that all of the states relevant to this action are deferral states.[1]

---

1. *See, e.g., Bost v. Federal Express Corp.,* 372 F.3d 1233, 1238 (11th Cir.2004) (noting that Florida is a deferral state); *Casteel v. Executive Bd. of Local 703 of Int'l Bhd. of Teamsters,* 272 F.3d 463, 466 (7th Cir.2001) ("Illi-nois is a deferral jurisdiction."); *Hodge v. New York Coll. of Podiatric Med.,* 157 F.3d 164, 166 (2d Cir.1998) ("New York is a 'deferral state.' ").

■ Unlike Title VII, the ADEA does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court. *Compare* 29 U.S.C. § 626(d)-(e) *with* 42 U.S.C. § 2000e–5(e)–(f); *see Hodge,* 157 F.3d at 168 ("Whereas Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court … ADEA plaintiffs need only wait 60 days after filing the EEOC charge."); *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1057 (2d Cir.1990).[2] However, in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant must file her federal suit within 90 days after receipt of the letter. *See* 29 U.S.C. § 626(e); *see also Julian v. City of Houston,* 314 F.3d 721, 726 (5th Cir.2002) (acknowledging that Section 626(e) "establishes a ninety-day limitations period for the ADEA complainant who actually receives notice from the EEOC, [but] does not require a complainant to receive such notice before filing suit.").

■ While the ADEA's time limit requirements are subject to equitable modification or estoppel, *Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 59 (2d Cir.1986), ADEA time limits "are not to be disregarded by courts out of a vague sympathy for particular litigants," *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

Three of the named Holowecki plaintiffs filed charges with the EEOC or an authorized state agency (collectively referred to as "EEOC") before bringing suit in federal court and eleven did not. Plaintiff Kennedy, a resident of Florida, filed an EEOC Intake Questionnaire form and accompanying verified affidavit on December 3, 2001, and an EEOC charge form on May 30, 2002. Kennedy did not receive a right-to-sue letter in conjunction with either of these filings. The verified affidavit, accompanying the Intake Questionnaire form, consisted of over four pages of text and alleged that FedEx had instituted a number of policies and practices that discriminated based on age. It stated, for instance, that "as a result of [the Best Practice Pays] policy and procedure changes," FedEx had "fired and/or constructively terminated" older couriers and had otherwise discriminated against older couriers. Moreover, it named several practices, such as FedEx's goals with respect to the number of stops per hour, that had increasingly gotten worse since the initiation of the BPP and MAPS.

The district court determined (1) that Kennedy's EEOC Intake Questionnaire and affidavit was not an EEOC "charge" and therefore did not satisfy Section 626(d)'s requirement that a claimant file a charge before bringing suit in federal court, and (2) that Kennedy's May 30, 2002, EEOC charge form was untimely because it was not filed 60 days prior to filing the April 30, 2002, ADEA complaint in federal court. *See* 29 U.S.C. § 626(d). Appellee does not dispute that Kennedy's EEOC Intake Questionnaire form and accompanying affidavit would satisfy the 60 and 300 day time limits set out in 29 U.S.C. § 626(d)[3] if we consider them to be an EEOC charge. In appellee's view, however, the EEOC Intake Questionnaire and accompanying affidavit do not satisfy

---

**2.** In dicta, this court has stated that the ADEA requires a claimant to obtain a right-to-sue letter before bringing suit in federal court. *See Legnani v. Alitalia Linee Aeree Italiane. S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) (per curiam). In the ADEA context, the only requirement is that a claimant must bring suit in federal court within 90 days *if* she receives a right-to-sue letter.

**3.** As mentioned above the 90–day time limit is not relevant because Kennedy did not receive a right-to-sue letter.

Section 626(d) because they are not properly considered to be an EEOC "charge."

Plaintiff Robertson, a resident of Illinois, filed an EEOC charge on December 1, 2000, and plaintiff McQuillan, a resident of New York, filed an EEOC charge on September 11, 1998. Although there was no question as to whether these constituted EEOC "charges" or as to whether these were filed 60 days prior to the initiation of the April 30, 2002 federal complaint, the district court found that they failed to meet the Section 626(d) requirement that the EEOC charge be filed within 300 days after the occurrence of the allegedly discriminatory acts. Appellee argued below that these two plaintiffs, both of whom received right-to-sue letters from the EEOC, failed to satisfy the requirement that they bring their April 30, 2002 federal suit within 90 days of receipt of the letters. *See* 29 U.S.C. § 626(e). After McQuillan filed his September 11, 1998 charge, the EEOC issued a right-to-sue letter on June 11, 1999.

Appellee argues that Robertson's right-to-sue letter was *received* on or about April 25, 2001, but Robertson states, "under penalty of perjury," that it was *received* shortly after February 7, 2002, and thus satisfies Section 626(e) because it was received within 90 days of the April 30, 2002 federal suit. After Robertson filed his December 1, 2000, charge with the EEOC, providing a Lake Villa, Illinois address, the EEOC sent Robertson a right-to-sue letter, dated April 25, 2001. According to Robertson's declaration, submitted to the district court in opposition to appellee's motion to dismiss,[4] he moved from Lake Villa in March of 2001 and requested that the United States Postal Service forward his mail. The April 25,

2001, right-to-sue letter, however, somehow did not reach Robertson. In January or February of 2002, Robertson contacted the EEOC because he had not heard anything since the filing of his charge. In response, on February 7, 2002, the EEOC sent Robertson the April 25, 2001 right-to-sue letter.

■ According to the record, eleven of the Holowecki named plaintiffs never filed anything approximating an EEOC charge. These non-filing plaintiffs claimed that their suit nonetheless did satisfy ADEA time limit requirements because of the single filing, or "piggybacking," rule. According to the piggybacking rule, "where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims aris[e] out of similar discriminatory treatment in the same time frame." *Snell v. Suffolk County,* 782 F.2d 1094, 1100 (2d Cir.1986) (internal quotation marks omitted). In cases such as this, when the allegedly discriminatory activity affects a large group, piggybacking is not allowed unless the filed charge provides "some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Tolliver,* 918 F.2d at 1058.

■ An individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge. *See Levy v. United States Gen. Accounting Office,* 175 F.3d 254, 255 (2d Cir.1999) (per curiam) (holding that individuals who filed administrative charge but failed to file federal suit within 90 days of receipt of right-to-sue letter as required by the ADEA could not take advantage of single filing rule); *see also Snell,* 782 F.2d at 1100

---

4. On August 6, 2002, plaintiffs filed an unsigned copy of Robertson's declaration with the district court as an exhibit to their Memorandum in Opposition to the Defendant's Motion to Dismiss the Complaint. Subsequently, on August 14, 2002, plaintiffs filed a signed version of Robertson's declaration with the district court.

(stating that "non-filing plaintiffs" can take advantage of the rule). As noted by other Circuit Courts of Appeals, allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal conciliation. *See, e.g., Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557–58 (11th Cir.1997) (quoting *Anderson v. Unisys Corp.*, 47 F.3d 302, 308–09 (8th Cir. 1995)). The Fifth Circuit Court of Appeals has stated, for instance that, "where the party wishing to piggyback has filed his own EEOC charge," he is "bound by the parameters of his own EEOC charge, and cannot subsequently utilize the single filing rule to avoid the statute of limitations." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1223–24 (5th Cir.1995) (abrogated on other grounds). We agree with this analysis.

The eleven non-filing plaintiffs (also referred to as "the piggybacking plaintiffs") present three piggybacking theories on appeal, all of which the district court rejected. They argue that they can piggyback onto (1) Kennedy's December 3, 2001, EEOC Intake Questionnaire and accompanying affidavit or (2) Robertson's December 1, 2000, EEOC charge, both of which, in their view, satisfy the ADEA's time limit requirements. Additionally, the piggybacking plaintiffs contend that they can piggyback onto timely EEOC charges filed by parties to a separate Florida lawsuit that was dismissed prior to the initiation of this claim, *Freeman v. Federal Express Corp.*, No. 99–2466 (M.D.Fla. Sept. 25, 2000), *aff'd*, 2002 WL 187185 (11th Cir. Jan.14, 2002), because the charges filed by those individuals put the EEOC and FedEx on notice about its allegedly nationwide discriminatory practices. None of the *Freeman* plaintiffs are parties to the *Holowecki* suit. None of the Holowecki

named plaintiffs were parties to the Florida lawsuit, although some of them unsuccessfully tried to join in an amended *Freeman* complaint that the Florida district court dismissed as moot. *See Bost v. Federal Express Corp.*, 372 F.3d 1233, 1236–37 (11th Cir.2004) (describing procedural history of *Freeman* litigation).

## DISCUSSION

■ We construe the district court's ruling as a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) rather than a dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) does not apply because the ADEA's time limits, which are subject to equitable modification, are not jurisdictional in nature. *See Dillman*, 784 F.2d at 59 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). We review a 12(b)(6) dismissal for failure to state a claim de novo. *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 327 (2d Cir.2005) (per curiam). When deciding whether plaintiffs satisfy the ADEA's time limit requirements, we accept all of plaintiffs' factual allegations as true and will only affirm the district court's dismissal if we are satisfied that plaintiffs can prove no set of facts that would entitle them to relief on their claims. *See Velez v. Levy*, 401 F.3d 75, 84 (2d Cir.2005).

■ In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiffs relevant filings with the EEOC and the declaration that Robertson submitted to the district court, none of which were attached to the complaint, because the Holowecki plaintiffs' rely on these documents to satisfy the ADEA's time limit requirements. "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document]

upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (internal quotation marks omitted).

## I. Kennedy's EEOC Intake Questionnaire and Affidavit

Both Kennedy and the piggybacking plaintiffs argue that, based on the circumstances of this case, Kennedy's EEOC Intake Questionnaire and accompanying affidavit constitute an EEOC "charge." Accordingly, they contend, it is timely in accordance with 29 U.S.C. § 626(d) because it is a "charge" that satisfies both the 60 day and 300 day time limits. The piggybacking plaintiffs further argue that the scope of Kennedy's charge is sufficient to incorporate their age discrimination claims, thereby permitting them to piggyback. We agree on both accounts and reverse the district court's dismissal of these plaintiffs' claims.

## A. Meaning of EEOC "Charge"

In order to decide whether Kennedy's EEOC Intake Questionnaire and accompanying affidavit constitutes an EEOC charge we first turn to the meaning of the statutory term "charge." The ADEA requires the filing of a timely charge with the EEOC but does not define the term "charge."[5] *See* 29 U.S.C. § 626(d). The EEOC has established interpreting regulations that specify the requisite information that must appear in a "charge." *See* 29 C.F.R. §§ 1626.3, 1626.6, 1626.8. The re-

quired content is minimal. For instance, a charge "is sufficient" when the EEOC receives "a . . . writing" (or information that an EEOC employee reduces to a writing) from the person making the charge that names the employer and generally describes the allegedly discriminatory acts. *See id.* § 1626.8(b) (citing *id.* § 1626.6). According to the regulations, a charge also "should contain," but is not required to contain, other information such as the full contact information for the employer and the individual filing the charge, and a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." *See id.* § 1626.8(a)(1)-(5).

Some Circuits have imposed an additional requirement, the "manifest intent" rule, that is not explicitly stated in the statute or interpreting regulations. According to these courts, for a written submission to the EEOC to constitute a "charge," it must manifest an individual's intent to have the agency initiate its investigatory and conciliatory processes. An oft-cited proposition of the Third Circuit is that "[i]n order to constitute a charge that satisfies the requirement of section 626(d), notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir.1983); *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319 (11th Cir.2001) (citing proposition favorably); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542 (7th Cir.1988) (same).

■ We agree with this proposition and hold that a writing submitted to the EEOC

---

**5.** The Supreme Court has not directly addressed the question of whether a written submission to the EEOC that is not on an EEOC charge form is an EEOC charge. *See Edelman v. Lynchburg Coll.*, 535 U.S. 106,

118, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002) (declining, in a case involving Title VII, to reach the question of whether or not claimant's filing of unsworn statement to EEOC constituted a "charge").

containing the information required by EEOC interpreting regulations is an EEOC "charge" for purposes of Section 626, only when the writing demonstrates that an individual seeks to activate the administrative investigatory and conciliatory process. We also agree that "notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler*, 710 F.2d at 99.

This interpretation of the meaning of "charge" recognizes that providing the EEOC with an opportunity "to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion," 29 U.S.C. § 626(b), is "an essential element" of the ADEA's statutory scheme, *cf. Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir.2000) ("[E]xhaustion of administrative remedies through the EEOC [is] 'an essential element of Title VII's statutory scheme.' "). Receiving a charge provides the EEOC with an opportunity to notify the prospective defendants and seek conciliation. *See Tolliver*, 918 F.2d at 1057; *see also Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 65 (2d Cir.2000). Without notice from the complainant, the EEOC is not provided with an opportunity to fulfill this statutory purpose. *See Schroeder v. Copley Newspaper*, 879 F.2d 266, 269 (7th Cir.1989) (" 'The efficient operation of the [EEOC] demands such notice' because 'Congress certainly did not intend the [EEOC] to squander its resources by investigating where no complaint has been filed.' ") (quoting *Bihler*, 710 F.2d at 99).

While we fully recognize that administrative exhaustion is an important aspect of the ADEA, if an individual satisfactorily notifies the EEOC of her charge, she is not foreclosed from federal suit merely because the EEOC fails to follow through with notifying the employer and attempting to resolve the matter through "conciliation, conference, and persuasion." 29 U.S.C. § 626(b). To require this would be to hold individuals accountable for the failings of the agency. Moreover, we see no reason to require that the EEOC have provided misleading information to a complainant about the status of her charge. Regardless of what the EEOC communicates or fails to communicate to a party, a written filing that complies with the ADEA and contains the information required by EEOC interpreting regulations is an EEOC "charge" as long as it demonstrates a party's intent to activate the administrative process.

This Court has recognized, in the ADEA context, that it is not required that the EEOC has actually taken action before an individual, who otherwise satisfactorily filed a charge, can bring suit in federal court. *Hodge*, 157 F.3d at 167–68. In *Hodge*, we allowed a federal ADEA suit to go forward even though the EEOC had not terminated its investigation. In that case, the investigation of the charge had been held up due to the withdrawal of plaintiff's initial administrative charge pursuant to an agreement that was later deemed invalid. *Id.* We concluded that plaintiff need not re-file a charge or seek to reopen the administrative proceedings. *Id.* Since the EEOC had the charge for more than the "60–day period that Congress established for the EEOC to investigate or attempt conciliation before the ADEA plaintiff is allowed to file suit in court," we saw "no statutory purpose to be served by a refiling or reopening requirement, the effect of which would be the imposition of additional delays, including another 60–day waiting period." *Id.* at 168. We cited *Bihler*, 710 F.2d at 99 n. 7, for the proposition that "[s]uch a holding

would establish a prerequisite to suit beyond a prospective plaintiff's control and therefore would be contrary to the spirit and purpose of the Act." *Hodge*, 157 F.3d at 168. This reasoning equally applies when an individual has manifested her intent to activate the administrative process. A complainant should not be held accountable if the EEOC fails to follow through after that complainant has provided written notice to the EEOC "that would convince a reasonable person" that she intends "to activate the Act's machinery," *Bihler*, 710 F.2d at 99.

## B. *Kennedy's EEOC Questionnaire as EEOC Charge*

█ Now that we have described the requirements for an EEOC "charge" we turn to the particular circumstances of this case. Kennedy filed her EEOC Intake Questionnaire and accompanying affidavit ("questionnaire") with the EEOC on December 3, 2001, more than 60 days *prior to* initiating this suit on April 30, 2002, and alleged discriminatory acts that occurred within 300 days of the filing of the questionnaire. *See* 29 U.S.C. § 626(d). The relevant question on appeal is whether this otherwise timely filing with the EEOC constituted a "charge." We conclude that Kennedy's questionnaire constituted an EEOC "charge" because (1) its content satisfied the statutory and regulatory requirements for what content must be included in a charge, and (2) the questionnaire communicated Kennedy's intent to activate the EEOC's administrative process.

█ First, Kennedy's questionnaire satisfies the EEOC's interpreting regulations specifying the required content that must appear in a "charge." *See* 29 C.F.R. §§ 1626.3, 1626.6, 1626.8(b). By stating that FedEx was discriminating against her and others because of their age, Kennedy's questionnaire certainly alleged that the defendant had engaged in "actions in violation of the Act," as is required by 29 C.F.R. § 1626.3. Moreover, the questionnaire form and accompanying four-page verified affidavit, were a "writing" that named the employer and generally described the alleged discriminatory act, as is required by 29 C.F.R. §§ 1626.6 and 1626.8(b). The affidavit detailed numerous instances of alleged discrimination, such as FedEx's implementation of various aspects of the "Best Practices Pays" and "Minimum Acceptable Performance Standards" programs. It also contained much of the content suggested by, but not required by, the regulations. *See* 29 C.F.R. § 1626.8(a). For instance, the questionnaire contained the full contact information for Kennedy and her employer, pertinent dates, the approximate number of employees at her workplace, and indicated that she had not filed any other complaint against this employer. *See* 29 C.F.R. § 1626.8(a)(1)-(5).

█ Second, the content of the questionnaire evidenced Kennedy's intent to activate the administrative process. The forceful tone and content of the affidavit should have alerted the EEOC that the filing was meant to be an EEOC "charge." For instance, the affidavit states that, in years past, Kennedy has "threatened to stand up for [her] rights" but that "[i]n the past several months" she had "come to realize that by doing nothing" she had allowed FedEx to continue its discriminatory practices against her. As further indication that Kennedy intended to activate the administrative process, by checking the "consent" box on the questionnaire form, Kennedy consented to the disclosure of her identity to the employer that allegedly discriminated against her. This demonstrates Kennedy's desire to move the investigatory and conciliatory process forward. Moreover, the EEOC form, on

which Kennedy submitted her affidavit, itself indicated that the case was currently "open," also suggested that her filing would be sufficient to initiate the administrative process. Finally, and perhaps most tellingly, the affidavit unambiguously states, "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of *Best Practice Pays/High–Velocity Culture Change.*" In light of these facts, we conclude that Kennedy provided written notice to the EEOC "that would convince a reasonable person" that Kennedy intended "to activate the Act's machinery," *see Bihler,* 710 F.2d at 99. The EEOC erred by failing to act in response to Kennedy's manifested intent.

FedEx argues that the fact that Kennedy later filled out an actual EEOC charge form indicates that her earlier intention was not to file a "charge." Some courts have followed this logic to some extent. *See Bost,* 372 F.3d at 1241; *Diez v. Minnesota Mining & Mfg. Co.,* 88 F.3d 672, 677 (8th Cir.1996). There is nothing in the record, however, that indicates that Kennedy, by also filing a charge form, was doing anything more than supplementing her earlier charge, or acting out of a surfeit of caution. Therefore, based on the circumstances of this case, we conclude that the content of Kennedy's questionnaire sufficiently demonstrated her intent to activate the administrative process and her later filing of an EEOC charge form does not compel us to find otherwise.

 Having established that the questionnaire in this case was a "charge," we turn to the piggybacking plaintiffs' theory that they can use Kennedy's charge to satisfy the ADEA's time limit require-

ments because Kennedy's affidavit identified discriminatory treatment that is similar to the acts described in the complaint and alleges that a large group of workers have experienced similar discrimination. *See Tolliver,* 918 F.2d at 1056–58. We agree with this theory.

Like the Holowecki complaint, Kennedy's questionnaire described the allegedly discriminatory policies, such as the Best Practices Pays, Minimum Acceptable Performance Standards, and other discriminatory practices, in detail. Kennedy's questionnaire also provided notice that the policies were affecting a wide range of FedEx employees. The affidavit stated, for instance, that the Best Practice Pays policy "has systematically targeted myself and others." [A. 158] Moreover, it stated that "management has continually picked at me and other older couriers emotionally and financially by changing our 'start times'" and that Kennedy knew she was "not alone" because "many older couriers" shared her "doubts and fears." Kennedy concluded by stating that FedEx must be forced to stop its discriminatory policies so that "we can finish out our careers" absent discriminatory practices.

Because we agree that the piggybacking plaintiffs can piggyback onto Kennedy's charge, there is no reason for this court to address the two other piggybacking theories presented on appeal. Therefore, we are left only to deal with the two remaining named plaintiffs who individually filed administrative charges with the EEOC.

## II. *Robertson's EEOC Charge*

It is undisputed that Robertson's charge was filed more than 60 days prior to the initiation of the Holowecki suit.[6] The district court held, however, that the Robert-

---

**6.** Robertson's charge was filed on January 2, 2001, and the Holowecki suit was filed April 30, 2002.

son charge was nonetheless untimely under Section 626(d) because it was filed more than 300 days after the implementation of the allegedly discriminatory policies alleged in the complaint. Specifically, the district court found the charge untimely because it was submitted "over six years after plaintiffs claim the policies were implemented." Appellee also challenges the Robertson charge on an additional timeliness ground not specifically addressed in the district court's opinion, arguing that Robertson did not file suit in federal court within 90 days of his receipt of a right-to-sue letter, in violation of Section 626(e). We find that, if we accept the allegations in the complaint as true, Robertson's charge was not filed more than 300 days after the implementation of the discriminatory policies alleged, and we therefore vacate the district court's dismissal of his claim on that basis. However, because it was not reached below, we remand for the district court to address whether Robertson's suit was untimely because it was not filed within 90 days of receiving the right-to-sue letter.

Robertson's charge unambiguously included references to allegedly discriminatory practices that took place within the 300–day period and did not even mention any particular FedEx policies or acts that were initiated more than 300 days before the filing of the charge. Instead Robertson's January 2, 2001, charge alleged that FedEx refused to allow Robertson to take accrued leave in August 2000, and terminated him on September 8, 2000, based on age and disability discrimination. Both of these acts occurred less than 300 days *before* Robertson filed his January 2, 2001, charge. The district court's reference to alleged discriminatory acts that occurred outside the 300–day period is simply a misreading of the allegations in the complaint. We therefore vacate the district court's dismissal on the basis that Robert-

son's charge was untimely, and remand for the district court to consider whether Robertson filed suit within 90 days of receiving the right-to-sue letter.

### III. McQuillan's EEOC Charge

As with Robertson, we disagree with the district court's determination that McQuillan failed to file within 300 days after the alleged unlawful practice occurred. McQuillan's charge, which was signed on September 11, 1998, challenges his termination from employment, which occurred on March 31, 1998. There is no doubt that the charge described acts that allegedly occurred within the required 300–day period. Because we vacate the district court's dismissal of McQuillan's claim on this ground, we remand for the district court to consider in the first instance appellee's argument that McQuillan's suit was not filed within 90 days of receiving the right-to-sue letter.

### CONCLUSION

The judgment of the district court is reversed with respect to all of the named plaintiffs, except Robertson and McQuillan. The district court's dismissal of Robertson's and McQuillan's claims is vacated. The case is remanded for further proceedings consistent with this opinion.