# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————————

No. 05-3496

———————————

| | | |
|---|---|---|
| Roger D. Parsons, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Pioneer Seed Hi-Bred International, | * | |
| Inc., | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

———————————

Submitted: April 20, 2006
Filed: May 19, 2006

———————————

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

———————————

HANSEN, Circuit Judge.

Roger D. Parsons appeals from the district court's[1] dismissal of his age discrimination claim against Pioneer Seed Hi-Bred International, Inc. (Pioneer). Because Parsons validly waived his right to bring an age discrimination claim in his severance agreement with Pioneer, we affirm the district court's judgment.

———————————

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

Parsons began working for Pioneer in 1972, and beginning in 2000 he held the position of Project Manager of the Warehouse Management System (WMS). In September 2002, Dean Oestreich (Vice President of Global Supply Management) and Bill Tomlinson (Director of North America Corn Production) determined that the initial phase of the WMS project was complete, that a WMS Coordinator was needed instead of a WMS Project Manager, and that the Coordinator position would not require the level of skills possessed by Parsons. Pioneer eliminated the WMS Project Manager position and gave the part-time WMS Coordinator duties to a younger current employee, Larry Lubinus (age 41), who continued to perform some of his own prior duties as well.

Oestreich told Parsons (age 55 at the time) on September 25, 2002, that his position was being eliminated and gave him two severance options. Parsons sought the advice of counsel and chose one of the severance agreements, which provided as relevant:

10. Further, you agree to keep the terms of this settlement and release confidential. You hereby acknowledge that failure to abide by the terms of this Agreement could result in the loss of the consideration provided for in Sections 11(a) and 11(b) herein. If you bring any legal action challenging this Agreement, you agree to immediately repay the consideration set forth in Sections 11(a) and 11(b) herein, unless such legal action directly pertains to the Age Discrimination in Employment Act.

11. In consideration of receipt of a lump sum payment of (a) Nine Thousand Eight Hundred Ninety-Six Dollars ($9,896.00); (b) the prorated portion of Part II of the Annual Reward Program Bonus in the amount of Eleven Thousand Five Hundred Seventy-Eight Dollars ($11,578.00) . . .; and (c) receipt of the payments and benefits as outlined in this Agreement and identified in the attached Severance . . . Summary, you hereby forever release and discharge Pioneer . . . from . . . any and all other causes of action, claims or demands or expenses of any kind (including attorney fees and costs actually incurred), at law or equity, to

settle potential claims you may have pursuant to . . . the Age Discrimination in Employment Act or any other Equal Employment Opportunity claims; . . . the Iowa Civil Rights Act, Iowa Code Chapter 216; . . . whether now known or unknown, foreseen or unforeseen, arising out of, or due to the employment relationship with Pioneer. . . .

. . . .

17. In any action to enforce this Agreement, except a claim pertaining to the Age Discrimination in Employment Act, the prevailing party's attorney fees shall be paid by the party against whom this Agreement is being enforced.

(J.A. at 144-45.)

After signing the agreement, Parsons brought suit for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34 (2000), and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216 (2005). In ruling on Pioneer's motion for summary judgment, the district court determined that the severance agreement validly waived Parsons' right to bring an age discrimination suit and that even if it did not, he failed to make a prima facie case of age discrimination. The district court entered summary judgment in favor of Pioneer, and Parsons appeals.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Parsons as the nonmoving party. Summary judgment is appropriate if, so viewed, the evidence reveals no material issues of fact, and Pioneer is entitled to judgment as a matter of law. See Thomforde v. IBM, 406 F.3d 500, 503 (8th Cir. 2005).

Congress enacted the Older Workers Benefits Protection Act (OWBPA) in 1990 to clarify the protections afforded older workers under the ADEA. Pub. L. 101-433, 104 Stat. 978 (1990). Congress addressed employers' attempts to pressure departing workers into waiving their right to bring an ADEA claim in exchange for a severance

or settlement agreement. See Long v. Sears Roebuck & Co., 105 F.3d 1529, 1534 (3d Cir. 1997) (explaining the legislative history leading up to the enactment of the OWPBA), cert. denied, 522 U.S. 1107 (1998). While such waivers are valid, Congress requires that the waivers be knowing and voluntary, and it enacted specific statutory requirements that must be met before the waiver can bind the worker. See 29 U.S.C. § 626(f) ("An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. . . . [A] waiver may not be considered knowing and voluntary unless at a minimum" it satisfies a list of requirements.) The requirements are strict and unqualified; if the waiver does not satisfy the statute, it is ineffective as a matter of law. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998) ("Congress delineated these duties with precision and without qualification: An employee 'may not waive' an ADEA claim unless the employer complies with the statute.").

Parsons argues that his waiver did not satisfy the statute because it did not meet the first enumerated requirement, that "the waiver [be] part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual." § 626(f)(1)(A). Parsons relies almost exclusively on our recent Thomforde v. IBM case, where we held that the severance agreement between the plaintiff and IBM did not meet this first statutory requirement. See 406 F.3d at 504-05. In Thomforde, the agreement specifically released IBM from all claims, including claims under the ADEA. The agreement also contained a covenant not to sue IBM, but specifically exempted ADEA claims from the covenant not to sue. The agreement loosely used "release" and "covenant not to sue" interchangeably. The agreement was not "written in a manner calculated to be understood" because a contradiction arose from the interchangeable use of the terms "release" and "covenant not to sue" coupled with the specific statement that the covenant not to sue did not apply to ADEA claims. See id. at 503-04. Our holding in Thomforde turned on the fact-intensive inquiry concerning the specific language used in the agreement and the agreement's imprecise use of legal terms of art.

The waiver in this case does not suffer the same flaw. As Parsons concedes, the severance agreement does not contain a covenant not to sue. The severance agreement specifically released Pioneer from any cause of action under the ADEA in paragraph 11 of the agreement. Parsons claims that language in paragraphs 10 and 17 is contradictory to that release, similar to the contradiction in Thomforde, rendering the waiver ineffective. The language here is not similarly confusing or contradictory. Paragraph 11 is the general release and states the consideration given for the release. Paragraph 10 is a confidentiality clause and provides that an employee's failure to abide by any of the terms of the agreement could result in loss of the consideration to be received pursuant to paragraph 11(a) or (b). It specifically states that if the employee "bring[s] any legal action challenging this Agreement," the employee will repay the consideration provided in subsections 11(a) or (b) "unless such action pertains to the [ADEA]." (J.A. at 144 (emphasis added).) By its terms, the forfeiture provision applies only if the employee challenges the Agreement itself, and it provides an exception for challenges pertaining to the ADEA, as required by the ADEA regulations. See 29 C.F.R. § 1625.23(b) (precluding any waiver provisions that penalize a party for challenging the validity of a waiver). Paragraph 10 does not purport to exempt ADEA lawsuits from the general release in paragraph 11.

Nor does paragraph 17 contradict the explicit release of ADEA rights. Paragraph 17 applies only "[i]n any action to enforce this agreement," and then provides that the party against whom the agreement is enforced shall pay the prevailing party's attorney's fees. The paragraph "except[s] a claim pertaining to the [ADEA]" from its attorney's fee provision. By its terms, the attorney's fee provision applies only to actions to enforce the agreement. The paragraph merely excepts enforcement claims that pertain to the ADEA from the attorney's fee provision. This again is consistent with the regulations that prohibit a waiver from penalizing an employee for challenging the validity of the agreement. It does not purport to negate the general release contained in paragraph 11. Legal documents by their nature are often very detailed and complex due to the need to cover a host of variables often

unseen at the time of their drafting, as well as the need in this case to comply with specific regulatory requirements. Pioneer's attempts to comply with the OWPBA and its accompanying regulations may make the agreement nuanced, but the language employed is written in a manner that is understandable by the average participant.

While we agree with the district court that the waiver meets the statutory requirements, we caution against the district court's reliance on Parsons' actions or lack thereof, namely that he did not question Pioneer officials about the meaning of the agreement or otherwise put Pioneer on notice that he did not understand that he was waiving his rights under the ADEA. The statutory requirements are minimum standards for creating a voluntary and knowing waiver. Without them, a waiver is not valid as a matter of law, regardless of whether the employee actually understood the waiver or not. The party asserting the validity of the waiver bears the burden of establishing that the agreement itself was written in a manner calculated to be understood. See 29 U.S.C. § 626(f)(3). The employee's subjective state of mind is irrelevant to this initial inquiry. See Kruchowski v. Weyerhaeuser Co., 423 F.3d 1139, 1142 (10th Cir. 2005) (recognizing the difference between the statutory requirements and the ultimate issue of whether the waiver was knowing and voluntary). Thus, the writing itself must satisfy § 626(f)(1)(A).

Issues of whether an employee expressed his misunderstanding or otherwise questioned a waiver go to an employee's subjective state of mind, which may be relevant to the ultimate issue of whether his waiver was in fact voluntary and knowing. See § 626(f)(1) ("An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary."). Thomforde's actions of questioning his employer about the waiver and explicitly putting IBM on notice that he planned to pursue an ADEA claim before he signed the agreement supported our conclusion that the waiver in that case was not sufficiently clear to meet the statutory requirement contained in § 626(f)(1)(A). See Thomforde, 406 F.3d at 504 & n.1. His actions were by no means necessary to our holding, however. We make clear that the

waiver itself must be "written in a manner calculated to be understood by such individual" to satisfy the minimum statutory requirements.  § 626(f)(1)(A).

Parsons does not otherwise challenge on appeal whether his waiver was knowing and voluntary.  Having found that the waiver met the statutory requirements, we agree with the district court that Parsons' age discrimination claims are precluded by the waiver, and Pioneer is entitled to judgment as a matter of law on that basis alone.

The district court's judgment is affirmed.

_____