Dr. William HODGE, Plaintiff–Appellant,

v.

The NEW YORK COLLEGE OF
PODIATRIC MEDICINE,
Defendant–Appellee.

No. 96–9349.

United States Court of Appeals,
Second Circuit.

Argued May 15, 1997.

Decided Oct. 7, 1998.

Clifford L. Davis, White Plains, NY, for Plaintiff–Appellant.

James S. Frank, Phillips Nizer Benjamin Kirm & Ballon, LLP, New York City (David E. Prager, of counsel), for Defendant–Appellee.

Susan L.P. Starr, Equal Employment Opportunity Commission, Washington, DC, for amicus curiae Equal Employment Opportunity Commission.

Before: WINTER, Chief Judge and CABRANES, Circuit Judge.*

WINTER, Chief Judge.

Dr. William Hodge appeals from Judge Jones's dismissal of his age discrimination suit on the ground that Hodge's suit was time-barred. *See Hodge v. New York College of Podiatric Medicine,* 940 F.Supp. 579 (S.D.N.Y.1996). Hodge alleged that the New York College of Podiatric Medicine, his former employer, violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, by terminating him. Prior to his termination, Hodge had filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). Hodge thereafter entered into a settlement agreement ("Agreement") with the College whereby the College agreed to employ Hodge for a final year ending on June 30, 1995. Hodge in turn agreed to release the College from liability under the ADEA and to withdraw his EEOC charge. Shortly after completing his final year of employment, Hodge filed the instant suit.

Although the district court held that the Agreement did not comply with the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), it held that the Agreement had been ratified by Hodge's acceptance of continued employment at the College. It thus concluded that the termination of the EEOC charge was effective and that the suit was time-barred because it was filed more than 90 days after that termination.

In light of *Oubre v. Entergy Operations, Inc.,* — U.S. ——, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998), appellant's performance and acceptance of benefits did not ratify the otherwise invalid Agreement. *See also Tung v. Texaco Inc.,* 150 F.3d 206 (2d Cir.1998) (per curiam). The remaining question is whether Hodge's suit is time-barred. We hold that it is not.

### BACKGROUND

Hodge's complaint alleged that he was employed by the College as a professor from 1973 through June 1995. During that time, he received a number of promotions and was, at the time of his termination, Chairman of the Microbiology Department as well as Director for Institutional Research. Hodge consistently received positive job evaluations both before and after the present dispute began.

In February 1993, Dr. Robert Bressler, Assistant Dean of the Division of Basic Sciences, told Hodge that he wanted to cut Hodge's salary and duties in half. Bressler stated that Hodge's salary was excessive because of his many years of employment and that the College could hire two new faculty members on Hodge's salary. Bressler further stated that Hodge's current two-year contract, which was to expire on June 30, 1994, would not be renewed past June 30, 1995. However, the College's Faculty Manual provided that professors with contracts

---

* The Honorable Frank X. Altimari, who was a member of the panel, passed away on July 19, 1998, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b).

longer than one year would be entitled to renewal absent cause not to renew.

In a letter dated February 10, 1993, the College refused to extend Hodge's two-year contract to June 30, 1996, as required under the Faculty Manual, instead offering him employment until June 30, 1995 and reducing his salary and duties by one-half.[1] Hodge rejected this offer. On March 3, 1993, the College sent Hodge a letter stating that he would be terminated on June 30, 1994. Hodge thereafter appealed to the Faculty Hearing Committee, pursuant to the Faculty Manual, alleging that the College was discriminating against him on the basis of age and had also violated its own procedures and contractual obligations in not offering him a renewal of his two-year contract. On September 1, 1993, Hodge filed a charge of age discrimination with the EEOC. On October 1, 1993, the Faculty Hearing Committee found that the College had acted improperly in not offering to renew Hodge's contract.

In October 1993, Hodge met with Bressler and Dean Michael Trepal; they told Hodge that if he did not sign a one-year non-renewable contract, the situation would get "nasty" and the College would "find" cause to terminate him. On April 1, 1994, Hodge signed the Agreement, in which he agreed to withdraw his EEOC charge and waive all his rights, including those afforded by the ADEA, arising out of his employment. It was also agreed that Hodge would receive a one-year extension through June 30, 1995, without any right of renewal. His employment at the College ceased on June 30, 1995. On August 25, 1995, Hodge filed the instant action.

## DISCUSSION

■ Before bringing an ADEA suit, plaintiffs must file a charge with the EEOC. *See* 29 U.S.C. § 626(d). The time periods for filing such a charge depend in part upon state law. If the state in which the discrimination occurred does not have its own agency charged with remedying age discrimination, ADEA plaintiffs must file a charge with the EEOC within 180 days of the alleged discrimination. *See id.* § 626(d)(1). In "deferral" states—ones that have their own age discrimination remedial agency—an ADEA plaintiff must file an EEOC charge within the earlier of 300 days after the alleged unlawful practice or, if a complaint was filed with the state agency, 30 days after receiving notice of termination of proceedings under the state law. *See id.* § (d)(2). New York is a "deferral state." *See Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir.1990). ADEA plaintiffs may file suit in court at any time from 60 days after filing the EEOC charge until 90 days after the plaintiff receives notice from the EEOC that the EEOC proceedings are terminated. *See* 29 U.S.C. § 626(d),(e).

In 1990, Congress amended the ADEA by adding 29 U.S.C. § 626(f), the Older Workers Benefit Protection Act ("OWBPA"), which regulates employee waivers and releases under the ADEA. The amendment states that an "individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." *Id.* § 626(f)(1). The Act lists eight factors that must be satisfied, or be otherwise inapplicable, for the waiver to be considered "knowing and voluntary." It requires, *inter alia*, that the release agreement "specifically refer[ ] to rights or claims arising under" the ADEA, that the employee "waive[ ] rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled," that the employee be "advised in writing to consult with an attorney prior to executing the agreement," that the employee be given at least 21 days—and up to 45 days in certain circumstances—to consider the agreement, and that the agreement provide for a period of at least seven days in which the employee may revoke the agreement. *Id.* § 626(f)(1)(B), (D)-(G). The OWBPA specifically states that waivers in settlements of ADEA–EEOC charges or lawsuits "may not be considered knowing and voluntary unless at a minimum" five of the eight factors listed in Section 626(f)(1) are

---

**1.** The College's February 10, 1993 letter contains an apparent mistake in that it states that Hodge's then-current contract expired on June 30, 1993, when in fact it expired on June 30, 1994. This mistake was corrected in the College's March 3, 1993 letter.

met and the employee "is given a reasonable period of time within which to consider the settlement agreement." 29 U.S.C. § 626(f)(2).

Hodge's filing of his EEOC charge on September 1, 1993 was timely. The charge designated, *inter alia,* the February 1993 conversation with Bressler and the March 1993 letter from the College stating it would not renew his contract as unlawful acts of discrimination. Both events occurred within 300 days of his EEOC filing.

■ It is also clear that the Agreement failed to comply with the OWBPA. The Agreement contains no reference to rights arising under the ADEA, no recommendation that Hodge consult an attorney, and no provision for a temporary revocation period, three of the eight statutory requirements that must be satisfied under the OWBPA. As the district court noted, "the parties do not dispute that the April 1994 Agreement does not meet the requirements of the OWBPA." The College did argue in the district court, however, and the court agreed, that the parties' subsequent performance under the Agreement—in particular the College's continued employment of Hodge for an additional year and Hodge's acceptance of all benefits from that employment—ratified the otherwise invalid release Agreement. It went on to hold that because the lawsuit was brought more than 90 days after termination of the EEOC charge, Section 626(e)'s 90–day filing requirement was not met. It therefore dismissed the complaint.

After the district court's decision and the argument of the appeal before us, the Supreme Court rendered its decision in *Oubre.* *Oubre* held that a release that failed to comply with the OWBPA did not bar a subsequent ADEA suit even though the release agreement had been fully performed and the plaintiff had not tendered back benefits received under the agreement. *See Oubre,* —— U.S. at ——–——, 118 S.Ct. at 841–42; *see also Tung,* 150 F.3d at 208–09. *Oubre* precludes a dismissal on the ground that Hodge's acceptance of benefits under the Agreement ratified it and thereby released the College from liability.

■ We also believe that the Agreement's invalidity prevents dismissal on the ground that the withdrawal of the EEOC charge bars Hodge from suing on the same claim. *Cf. Dalessandro v. Monk,* 864 F.2d 6, 8 (2d Cir.1988) ("Once a plaintiff settles a claim and withdraws it from the EEOC, he may not then sue on the same claim in federal court."). If the withdrawal of the EEOC charge pursuant to an invalid agreement is not a bar to suit on an ADEA claim, it follows that the withdrawal cannot trigger the 90–day limitations period of Section 626(e) so as to preclude any future suit once that period has expired. Allowing such a withdrawal to trigger the 90–day period would be contrary to *Oubre* because it would cause Hodge and other plaintiffs in his circumstances to lose their ADEA rights within 90 days of the signing of an invalid release agreement and as a direct result of that agreement.

■ Nevertheless, there are remaining questions. First, because the EEOC processes were terminated, it is arguable that Hodge had to refile with the agency or seek to reopen the prior proceeding before bringing the instant action. Second, if refiling or reopening is not required, we must address whether there is a limitations period within which Hodge had to bring the present action and whether he did so. We resolve these questions in Hodge's favor.

Decisions such as *Oubre* and *Tung* involved circumstances in which the EEOC charge was filed after the invalid release agreement had been signed. *See Oubre,* —— U.S. at ——, 118 S.Ct. at 840; *Tung,* 150 F.3d at 208. In the instant matter, the EEOC process had begun but was terminated by a withdrawal of the charge pursuant to the invalid Agreement. One option in such circumstances would be to require the employee to file another EEOC charge or to seek to reopen the prior proceeding. Under the present facts, however, we see no reason to require Hodge to go back to the EEOC.

■ There are important differences between the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* with regard to prerequisites to bringing suit.

Whereas Title VII plaintiffs must receive a "right-to-sue" letter from the EEOC before filing suit in court, *see id.* § 2000e–5(f)(1), ADEA plaintiffs need only wait 60 days after filing the EEOC charge. *See* 29 U.S.C. § 626(d) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."); *see also Tolliver*, 918 F.2d at 1057. Thus, the ADEA plaintiff can sue in court even if the EEOC has not yet completed its investigation or attempts at conciliation. *See Bihler v. Singer Co.*, 710 F.2d 96, 99 n. 7 (3d Cir.1983) (district court's jurisdiction over an ADEA claim does not "depend[] on the EEOC's actually having taken some action in response to a filed charge. Such a holding would establish a prerequisite to suit beyond a prospective plaintiff's control and therefore would be contrary to the spirit and purpose of the Act.").

This statutory framework supports our conclusion that Hodge is not required to refile or reopen the charge with the EEOC in order to bring the present action. The EEOC had Hodge's charge from September 1, 1993 until April 8, 1994, well over the minimum 60–day period that Congress established for the EEOC to investigate or attempt conciliation before the ADEA plaintiff is allowed to file suit in court. At the time of the Agreement, therefore, Hodge was entitled to bring suit, and we see no statutory purpose to be served by a refiling or reopening requirement, the effect of which would be the imposition of additional delays, including another 60–day waiting period.

■ Holding that an ADEA plaintiff in Hodge's circumstances need not refile or seek to reopen the EEOC proceedings raises the second question, however. The ADEA also prohibits the bringing of a suit more than 90 days after termination of the proceedings by the EEOC. *See* 29 U.S.C. § 626(e). Dispensing with a need to refile or seek to reopen disposes of the issue of whether Hodge's suit was too early. The remaining question is whether it was too late. We believe that it was not.

Because we hold that Hodge need not refile with the EEOC, there is no clear statutory answer as to what time period governs Hodge's bringing of suit or when that time period starts. This gap is the understandable result of the ADEA and the OWBPA having been passed at different times. We believe, however, that Hodge was not required to bring such an action before the cessation of his employment pursuant to the Agreement.

It is true that the Agreement notified Hodge that his employment would end as of June 30, 1995, and that there is caselaw holding that limitations periods begin with notice of discharge rather than with the actual discharge. *See, e.g., Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.1985) ("The 300–day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge."). However, treating the execution of the invalid Agreement as triggering a limitations period might cause Hodge and others in his circumstances to lose ADEA rights by executing an agreement invalid under the OWBPA. Such a result would be perverse under the OWBPA and *Oubre* because it would both give a legal effect to an agreement otherwise invalid under the OWBPA and deny ADEA rights to employees who accept benefits under such an agreement for more than the limitations period instead of repudiating the agreement and suing within the applicable period.

If the execution of the Agreement with its notice of impending cessation of employment does not trigger a limitations period, then we believe that the earliest date on which such a period may begin is that of the cessation of employment itself. That cessation is, after all, the ultimate act of the alleged ADEA violation, and the use of that date offends neither the requirements of the OWBPA nor the teachings of *Oubre*. It simply treats the invalid agreement as tolling the limitations period until the final day of employment provided under that agreement.

If the earliest triggering date of Hodge's limitations period was June 30, 1995, then the present suit is clearly timely. If Hodge had

refiled or sought to reopen his EEOC charge after that date, he would have had, following the expiration of another 60–day waiting period, at the very least 90 days within which to commence the present action. Our dispensing with the refiling or reopening requirement for a plaintiff in Hodge's circumstances merely eliminates a second, superfluous 60–day waiting period. Such a plaintiff surely still has at least 90 days within which to commence an ADEA suit. Because Hodge's federal ADEA suit would not have been time-barred had he chosen to refile or reopen his never-acted-upon EEOC charge, it would make no sense to hold it time-barred where we have dispensed with the need to refile or reopen the charge. We thus hold that an ADEA action brought by an employee in Hodge's circumstances—who has filed an ADEA charge with the EEOC that was pending more than 60 days, has withdrawn the charge pursuant to an agreement invalid under the OWBPA, and brings the ADEA lawsuit within 90 days of the last day of employment—is timely.

Our holding is extremely narrow. We specifically do not decide whether an ADEA plaintiff whose EEOC charge was pending less than 60 days when withdrawn pursuant to an invalid settlement must refile or seek to reopen the EEOC proceedings before bringing suit. We also do not decide what time periods would be applicable where the invalid release causing withdrawal of the EEOC charge did not continue the plaintiff's employment. We do not even decide whether an action like Hodge's must be filed within 90 days of the last day of employment. We hold simply that the present action is timely.

We therefore reverse.