# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1538

_____

Dale J. Thomforde,                              *
                                                *
            Appellant,                          *
                                                *       Appeal from the United States
      v.                                        *       District Court for the
                                                *       District of Minnesota.
International Business Machines                  *
Corporation,                                    *            [PUBLISHED]
                                                *
            Appellee.                           *


_____

Submitted: January 11, 2005
Filed: May 3, 2005

_____

Before SMITH, FAGG, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

      Dale Thomforde appeals the district court's grant of summary judgment to International Business Machines Corporation (IBM) on Thomforde's discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000). Because the release of claims signed by Thomforde as part of IBM's involuntary termination program did not satisfy the statutory waiver requirements of the Older Workers Benefits Protection Act (OWBPA), 29 U.S.C. § 626(f) (2000), we reverse.

Thomforde worked for IBM as an engineer from 1973 to 2001. In 2001, as part of a reduction in force, IBM implemented the Server Group Resource Action (SGRA), an involuntary termination program. In July 2001, Thomforde was notified that he had been selected for termination, and IBM provided him with a document titled General Release and Covenant Not to Sue (Agreement). The document began by referring to "this General Release and Covenant Not to Sue (hereinafter 'Release')" and contained the following relevant language:

> In exchange for the sums and benefits received pursuant to the terms of the [SGRA], DALE J. THOMFORDE (hereinafter "you") agrees to release and hereby does release [IBM] . . . from all claims, demands, actions or liabilities you may have against IBM of whatever kind including, but not limited to, those that are related to your employment with IBM, the termination of that employment, or other severance payments or your eligibility for participation in the Retirement Bridge Leave of Absence, or claims for attorneys' fees.

> . . . .

> . . . You also agree that this Release covers, but is not limited to, claims arising from the [ADEA], as amended, . . . and any other federal, state or local law dealing with discrimination in employment including, but not limited to, discrimination based on sex, sexual orientation, race, national origin, religion, disability, veteran status, or age.

> . . . .

> You agree that you will never institute a claim of any kind against IBM . . . including, but not limited to, claims related to your employment with IBM or the termination of that employment or other severance payments or your eligibility for participation in the Retirement Bridge Leave of Absence. If you violate this covenant not to sue by suing IBM . . ., you agree that you will pay all costs and expenses of defending against the

suit incurred by IBM . . ., including reasonable attorneys' fees, and all further costs and fees, including attorneys' fees, incurred in connection with collection. This covenant not to sue does not apply to actions based solely under the [ADEA], as amended. That means that if you were to sue IBM . . . only under the [ADEA], as amended, you would not be liable under the terms of this Release for their attorneys' fees and other costs and expenses of defending against the suit. This Release does not preclude filing a charge with the U.S. Equal Employment Opportunity Commission.

(Appellant's Add. at 4-5.)

Prior to signing the Agreement, Thomforde asked his supervisor, Andrew Schram, if the exception for ADEA claims contained in the covenant not to sue meant that he could sue IBM if the case was limited to claims under the ADEA. Schram told Thomforde that he would contact IBM's legal department. Schram later sent Thomforde an e-mail stating "Regarding your question on the General Release and Covenant Not to Sue, the wording is as intended by IBM. The site attorney was not comfortable providing an interpretation for you and suggested you consult with your own attorney." (Appellant's App. at 100.) After meeting with his attorney to review the Agreement, Thomforde concluded that he could sign the Agreement and still pursue his claims of age discrimination as long as they were limited to ADEA claims.

IBM terminated Thomforde on August 24, 2001, and Thomforde signed the Agreement on September 6, 2001. He simultaneously gave Schram a letter addressed to IBM's counsel complaining about his reduced retirement benefits and making a second request for a one-year Retirement Bridge Leave of Absence, which had previously been denied. In the letter, Thomforde stated that he found "no other alternative but to pursue various legal channels under the anti-age discrimination statutes." (Id. at 7.) He also stated that he would "be filing a complaint with the EEOC, following up with other possible legal action, as allowed under the General Release and Covenant Agreement." Id.

In November, Thomforde filed charges with the EEOC, which IBM sought to have dismissed based on the waiver in the Agreement. The EEOC issued a Notice of Right to Sue in October 2002, and Thomforde filed the instant suit. IBM moved for summary judgment, arguing that Thomforde, by signing the Agreement and accepting benefits, had released all of his claims against IBM; that Thomforde knowingly and voluntarily signed the Agreement; that the waiver conformed to the specifications of the OWBPA; and that the Agreement was not ambiguous. IBM claimed that the covenant not to sue was an entirely different provision from the release provisions, and each provision performed different functions. According to IBM, the covenant not to sue did not "undo" his release of the ADEA claims, but merely exempted Thomforde from liability for attorneys' fees associated with defending a suit.

In response, Thomforde argued that he did not knowingly and voluntarily waive his ADEA rights because (1) the Agreement expressly preserved Thomforde's right to file an action solely under the ADEA; (2) the waiver did not conform to the OWBPA requirement that it be written in a manner calculated to be understood by an individual signing the agreement; (3) under a "totality of the circumstances" approach determining whether the waiver was knowing and voluntary, the evidence showed that Thomforde did not understand that he was surrendering his rights under the ADEA by signing the agreement; and (4) even under state contract principles, the agreement was ambiguous on its face. The district court granted IBM's motion for summary judgment. It found that Thomforde clearly waived any potential claims against IBM by signing the Agreement. The court also found that the waiver signed by Thomforde fully conformed with the OWBPA requirements, and, rejecting a "totality of the circumstances" approach, determined that the waiver was unambiguous, and therefore enforceable. Thomforde appeals.

II.

We review de novo the district court's grant of summary judgment. Evers v. Alliant Techsys., Inc., 241 F.3d 948, 953 (8th Cir. 2001). Summary judgment is appropriate where the evidence, viewed in the light most favorable to Thomforde as the non-moving party, shows no genuine issue of material fact and that IBM is entitled to judgment as a matter of law. Id. We review the district court's statutory interpretation of the OWBPA de novo. Ellison v. Premier Salons Int'l, Inc., 164 F.3d 1111, 1113 (8th Cir. 1999).

Enacted in 1990, the OWBPA amended the ADEA by providing that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary. . . . [A] waiver may not be considered knowing and voluntary unless at a minimum" the waiver satisfies a number of requirements, one of which is that "the waiver is part of an agreement between an individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C. § 626(f)(1)(A) (emphasis added). The statutory requirements for waiver of ADEA claims are strict and unqualified; if an employer fails to meet any of the statutory requirements, the waiver is ineffective as a matter of law. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998). Thus, if the Agreement at issue here was not "written in a manner calculated to be understood by such individual, or by the average individual eligible to participate," then Thomforde did not release his rights under the ADEA.

The waiver language in the Agreement clearly states that Thomforde, in exchange for the amount determined under the SGRA, released IBM from all claims of any kind, including claims under the ADEA. Three paragraphs later, the Agreement then states that "[y]ou agree that you will never institute a claim of any kind against IBM . . . including, but not limited to, claims related to your employment with IBM." (Appellant's Add. at 5.) The paragraph continues by stating that "[t]his

-5-

covenant not to sue does not apply to actions based solely under the [ADEA]." (Id.) Thus, one plausible reading of the document reveals that the employee releases IBM from all ADEA claims and agrees not to institute a claim of any kind against IBM, except the employee may bring an action based solely under the ADEA. Without a clear understanding of the legal differences between a release and a covenant not to sue, these provisions would seem to be contradictory; how can an employee bring a suit solely under the ADEA if the employee has waived all claims under the ADEA?

IBM argues that the release and the covenant not to sue were totally separate and distinct provisions of the Agreement. A release of claims and a covenant not to sue serve different purposes. See Black's Law Dictionary 438 (rev. 4th ed. 1968) (defining "covenant not to sue" as "[a] covenant by one who had a right of action at the time of making it against another person, by which he agrees not to sue to enforce such right of action"); id. at 1453 (defining "release" as "[t]he relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists . . . to the person against whom it might have been demanded or enforced"). Despite their distinct purposes, the differences between a release and a covenant not to sue are fairly amorphous and may not be readily apparent to a lay reader. The intended effect of the Agreement was to release the employee's substantive claims under the ADEA, while preserving the employee's right to challenge the validity of the release through a lawsuit, as provided by the regulations. See 29 C.F.R. § 1625.23(b) (precluding any waiver provisions that penalize a party for challenging the validity of a waiver). Yet, the Agreement does not explain how the provisions relate to each other or the limited nature of the exception to the covenant not to sue in light of the release of claims. Once IBM chose to use the legal terms of art in the Agreement, IBM had a duty to carefully explain the provisions. See 29 C.F.R. § 1625.22(b)(3) ("Waiver agreements must be drafted in plain language . . . [and] usually will require the limitation or elimination of technical jargon . . . .").

Not only does the Agreement fail to explain the relationship between the release and the covenant not to sue, it also uses the terms in such a way as to suggest that they are interchangeable. The opening line of the Agreement refers to the General Release and Covenant Not to Sue as "the Release," indicating that the terms are interchangeable. There are no headings indicating a change of topic between the paragraphs. Immediately following the sentence that states that "[t]his covenant not to sue does not apply to actions based solely under the [ADEA]," the Agreement uses the term Release to explain the covenant not to sue: "[t]hat means that if you were to sue IBM . . . only under the [ADEA], you would not be liable under the terms of this Release for their attorneys' fees." (Appellant's Add. at 5 (emphasis added).) The paragraph addressing the covenant not to sue continues with a statement that "this Release" does not prohibit an employee from filing a charge with the EEOC, again intimating that the terms are interchangeable.

We can easily see how a participant under this Agreement could construe the statement that "[t]his covenant not to sue does not apply to actions based solely under the [ADEA]" as an exception to the general release, not just an exception to the covenant not to sue. Given the lack of clarity in the Agreement, and IBM's declination to tell Thomforde what it meant by the language, we hold that the Agreement is not written in a manner calculated to be understood by the intended participants as required by the OWBPA.[1] Cf. Cole v. Gaming Entm't, L.L.C., 199 F.

---

[1]IBM directs us to an unpublished district court opinion construing a similar IBM waiver agreement, which found that the waiver agreement satisfied the statutory requirements. See Syverson v. Int'l Bus. Machs. Corp., No. 03-CV-04529 (N.D. Cal. May 4, 2004), appeal docketed, No. 04-16449 (9th Cir. July 26, 2004). The Syverson court relied on the district court decision in the instant case, and noted that "[t]o the extent that the language of the waiver requires clarification, the waiver explicitly advises affected employees to consult an attorney, [or] their manager . . . ." (Appellee's App. at 53.) Thomforde attempted to consult his manager, but was told that the corporate attorney was "not comfortable" providing him with an interpretation of the Agreement. It seems axiomatic that if an agreement needs

Supp. 2d 208, 214 (D. Del. 2002) (holding language reciting that "[e]mployee acknowledges that he/she has been advised to consult with an attorney prior to executing this Agreement" was insufficient to meet statutory requirement that employer must advise employee in writing to consult an attorney prior to signing the waiver). As such, the Agreement is ineffective as a matter of law to waive Thomforde's rights under the ADEA.[2] See Oubre, 522 U.S. at 427-28.

III.

The district court's summary judgment in favor of IBM is reversed, and the case is remanded for further proceedings.

───────────────────────────────

───────────────────

clarification, it is not written in a manner calculated to be understood. To rely on the agreement's direction to seek legal advice, a separate statutory requirement for a valid waiver, see § 626(f)(1)(E), for clarification of the waiver would nullify the distinct requirement that the agreement be written in a manner calculated to be understood by the participant (as opposed to his attorney).

[2]IBM agreed at oral argument that if we found the waiver deficient under the statute, we need not decide the proper test to apply to determine whether the waiver was also knowing and voluntary. Compare Ulvin v. Northwestern Nat'l Life Ins. Co., 943 F.2d 862, 866 & n.4 (8th Cir. 1991) (applying contract principles to pre-OWBPA waiver), cert. denied, 502 U.S. 1073 (1992), with Bennett v. Coors Brewing Co., 189 F.3d 1221, 1228-29 (10th Cir. 1999) (holding that even if statutory requirements are met, courts must inquire into totality of the circumstances to determine if waiver was knowing and voluntary). We leave that discussion for another day.