Thomas **RIDINGER,** Plaintiff,

v.

**DOW JONES & COMPANY, INC.,** Defendant.

No. 09 Civ. 6173(FM).

United States District Court, S.D. New York.

April 13, 2010.

**370**

Jonathan B. Altschuler, Jonathan Borrow Altschuler, P.C., New York, NY, for Plaintiff.

Kevin G. Chapman, Dow Jones & Company, Princeton, NJ, for Defendant.

### MEMORANDUM DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

Plaintiff Thomas Ridinger ("Ridinger") is a former employee of defendant Dow Jones & Company, Inc. ("Dow Jones"). In this action, he alleges that he was wrongfully terminated on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA") and the New York State and New York City Human Rights Laws. Dow Jones has now moved to dismiss the complaint pursuant to Rules 12(b) and 12(d) of the Federal Rules of Civil Procedure. For the reasons set forth below, its motion is granted.

### I. *Background*

In 2007, after nearly seven years as a Dow Jones employee, Ridinger was terminated from his position as Photo Editor of SmartMoney, a Dow Jones publication. He was sixty-two years old at the time and contends that he was replaced by a substantially younger woman who had "scant or no experience as a photo editor." (Compl. ¶ 16). He commenced this action after receiving a "right to sue" letter from the Equal Employment Opportunity Commission.

It is undisputed that, as part of his termination, Ridinger signed a Separation Agreement and General Release ("Agreement"), pursuant to which he received twenty weeks of severance pay and other benefits. Dow Jones contends that the terms of the Agreement preclude Ridinger's pursuit of his age discrimination claims in this lawsuit. Ridinger counters that the Agreement was not "written in a manner calculated to be understood" and therefore violated Section 7 of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C § 626.

### II. *Standard of Review*

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, because Dow Jones relies on matters outside the complaint, its motion must be treated as a motion for summary judgment. To prevail, Dow Jones therefore must show that there is "no genuine issue of material fact" and that it is entitled "to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding the motion, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and ... draw all permissible inferences in favor of that party." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997). Furthermore, "[t]he [C]ourt's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." *Id.* at 55.

### III. *Applicable Law*

Congress enacted the OWBPA in 1990 to ensure that "older workers [are] not coerced or manipulated into waiving their rights under the ADEA." 136 Cong. Rec.

27,061 (1990). Section 7 of the statute permits an employee to waive his ADEA claims as part of a separation agreement, but only if the waiver is "knowing and voluntary." 29 U.S.C. § 626. Generally, to meet that standard, the waiver must comply with eight statutory requirements. *Id.* § 626(f)(1). One of those requirements is that the waiver be "part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." [1] *Id.*

Problems may arise when an agreement refers to both a waiver of the right to bring an ADEA clam and a covenant not to sue. More specifically, although an employee's knowing and voluntary waiver of rights under the ADEA may be absolute, the regulations promulgated by the EEOC pursuant to the OWBPA state that "no ADEA waiver agreement, covenant not to sue, or other equivalent arrangement may impose any condition precedent, any penalty, or any other limitation adversely affecting any individual's right to *challenge the agreement.*" 29 C.F.R. § 1625.23(b) (emphasis added). Thus, as part of a severance agreement, an employee may waive claims and covenant not to bring suit on any claims under the ADEA, but cannot surrender the right to challenge the *validity* of the waiver or covenant. Moreover, the employer cannot condition the right to bring such a suit on the return of any consideration previously received or the payment of attorney's fees if the employee is unsuccessful. *Id.*

In two prior cases, the Courts of Appeals for the Eighth and Ninth Circuits have found that an agreement drafted by IBM which contained both a waiver of ADEA claims and a covenant not to sue was not "calculated to be understood" and, therefore, was unenforceable under the OWBPA. *See Syverson v. Int'l Bus. Machines Corp.,* 472 F.3d 1072, 1077 (9th Cir.2007); *Thomforde v. Int'l Bus. Machines Corp.,* 406 F.3d 500, 504 (8th Cir. 2005). The shortcoming identified by both courts was that the IBM agreement required an employee to release all ADEA claims, but also said that the employee's covenant not to sue did not apply to actions "based solely under the ADEA." *Syverson,* 472 F.3d at 1082; *Thomforde,* 406 F.3d at 502.

As the *Thomforde* court explained, "[w]ithout a clear understanding of the legal differences between a release and a covenant not to sue, these provisions would seem to be contradictory" and might cause an employee to believe that a suit under the ADEA was permitted. 406 F.3d at 503. Accordingly, IBM had failed to communicate the intended effect of the agreement, which was "to release the employee's substantive claims under the ADEA, while preserving the employee's right to challenge the validity of the release through a lawsuit, as provided by the regulations." *Id.* at 504. The *Thomforde* court held that the IBM agreement, therefore, was "ineffective as a matter of law to waive Thomforde's rights under the ADEA." *Id.* at 505.

In *Syverson,* the Ninth Circuit similarly concluded that "the existence of a technical

---

1. Regulations promulgated by the EEOC further caution that employers seeking to incorporate waivers into their separation agreements "should take into account such factors as the level of comprehension and education of typical participants," which typically will require them to limit or eliminate "technical jargon" and "long, complex sentences." 29 C.F.R. § 1625.22(b) (3). As the EEOC regulations explain, the "waiver agreement must not have the effect of misleading, misinforming, or failing to inform participants and affected individuals." *Id.* 1625.22(b)(4).

distinction between [a release and a covenant not to sue] does nothing to demonstrate that the average employee confronted with the . . . [a]greement would grasp the import of the distinction in a meaningful way." *Syverson,* 472 F.3d at 1083. The court held that the IBM agreement consequently did not "satisfy the 'manner calculated' requirement of the OWBPA, was not 'knowing and voluntary,' and [could not] be enforced." *Id.* at 1087.

## IV. *Validity of Ridinger's Release*

The Agreement that Ridinger signed provides, insofar as relevant:

**4. *Waiver of claims against Employer***

(a) Employee . . . waives, releases and forever discharges the Company . . . from all claims . . . which Employee may now or hereafter have against the Company from the beginning of time through the date of this Agreement, including but not limited to . . . any claim . . . arising under . . . the Age Discrimination in Employment Act . . . . **Nothing in this Agreement shall limit or restrict Manager's right under the ADEA to challenge the validity of this Agreement in a court of law. This waiver and release does not apply to any claim that may arise under the ADEA after the date that Employee signs this Agreement.**

. . .

(d) *Limitation on Promise Not to Sue* . . . . Employee further understands that he retains the right to bring a legal action to enforce the terms of this Agreement or to challenge the validity of this Agreement without penalty or obligation to the Company under this Agreement . . . Employee further understands that, under the law, the obligations to repay money received and to pay the Company's damages and costs . . . in the event that Employee breaches his promise not to file a suit over released claims do not apply to claims under the ADEA. Therefore the financial obligations . . . would not apply to a suit filed solely under the ADEA, but Employee nevertheless understands that the waivers and releases . . . still apply to. claims and that he has waived all ADEA claims as part of this agreement and that in any suit brought under the ADEA, Employee would not be entitled to any damages or other relief unless this Agreement and the waivers contained in it were deemed to be unlawful or otherwise invalid.

(Agreement ¶ 4) (emphasis in original).

At the outset, although Ridinger does not raise the issue, there is some confusion because the Agreement indicates that nothing limits or restricts the "Manager's right to challenge the validity of the Agreement in a court of law." (*Id.*). The first paragraph of the Agreement, however, defines Ridinger as the "Employee" and Dow Jones as the "Company." There is no language defining the term "Manager." As a consequence, Ridinger conceivably could have read the language referring to a "Manager" in isolation to indicate that only Dow Jones, as his "Manager," retained the right to challenge the validity of the Agreement in a court of law. Nonetheless, the Agreement elsewhere makes clear that the "Employee . . . retains the right to bring a legal action to . . . challenge the validity of th[e] Agreement without penalty or obligation to the Company under th[e] Agreement (except that the benefits to Employee provided in th[e] Agreement may not apply if the Agreement is deemed to be invalid)." (*Id.*). Accordingly, even if Ridinger thought that the term "Manager" referred to Dow Jones, the Agreement correctly informed him of his rights. Moreover, if Ridinger

interpreted the term "Manager" to refer to himself, the Agreement twice stated the applicable law correctly. This apparent word processing error therefore does not affect the enforceability of the Agreement.

Citing *Thomforde* and *Syverson*, Ridinger contends that "the courts and EEOC have consistently taken the position that the language in the waiver part of those agreements [does not] in this case waive ... [his] right to commence the instant action." (Ridinger Mem. at 4). The Agreement that Ridinger signed, however, is a far cry from the IBM agreement challenged in those cases. At the outset, the Agreement in this case never uses the legal terms "waiver" "release" or "covenant not to sue" that the Eighth and Ninth Circuits suggested would be difficult for a lay person to understand. In addition, the Agreement clearly states that Ridinger's waiver extends to ADEA claims, but that he retains the right to challenge the validity of the Agreement containing the waiver. Moreover, the last sentence of paragraph 4(d) indicates, consistent with 29 C.F.R. § 1625.23(b), that Ridinger would not be subject to any cost shifting if he brought a suit under the ADEA, but that he also would be unable to recover any damages unless the "Agreement and the waivers contained in it were deemed to be unlawful or otherwise invalid." In short, the Agreement accurately sets forth Ridinger's contractual and statutory rights. *See Parsons v. Pioneer Seed Hi–Bred Int'l, Inc.,* 447 F.3d 1102, 1104 (8th Cir.2006) (upholding a waiver agreement that clearly and specifically exempted ADEA claims from the requirements that the consideration paid to the employee be repaid and that the employee pay the employer's attorney's fees if the employee unsuccessfully challenged the agreement).

In his opposition papers, Ridinger also suggests that there is an inconsistency in the Agreement between the waiver of his right to sue and the subsequent language indicating that his release "does not apply to any claim that may arise under the ADEA after the employee signs the Agreement." (Ridinger Mem. at 5). Although Ridinger suggests that "these inconsistencies were treated in *Thomforde,*" that case says nothing whatsoever about the waiver of after-acquired claims. Moreover, the OWBPA expressly requires, as one of the eight requirements for an effective waiver, that an employee "not waive rights or claims that may arise after the date the waiver is executed." 29 U.S.C. § 626(f)(1)(c). Language that tracks the OWBPA obviously cannot be the basis for a claim that the Agreement is unenforceable.

Finally, in his papers, Ridinger argues that the written waiver in his Agreement must be deemed ineffective based on *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998), and *Hodge v. New York College of Podiatric Medicine,* 157 F.3d 164 (2d Cir.1998). (Ridinger Mem. at 4). Neither of these cases supports his position.

In *Oubre,* after observing that the OWBPA delineated "with precision and without qualification" the duties that an employer must meet in order for an ADEA waiver to be effective, the Court held that an employee "may not waive an ADEA claim unless the employer complies with the statute." 522 U.S. at 427, 118 S.Ct. 838. Here, however, the waiver language in the Agreement does comply with the OWBPA. Moreover, the only other argument that Ridinger raises is that paragraph 4 of the Agreement is lengthy. (Ridinger Mem. at 3–4). Although Dow Jones professes not to understand why Ridinger considers this significant, (see Dow Jones Reply Mem. at 4 n. 2), the EEOC regulations state that the drafting of a waiver agreement that meets the dictates of the OWBPA "usually will require the limitation or elimination of

technical jargon and of long, complex sentences." 29 C.F.R. § 1625.22(b)(3). In this case, as noted above, Dow Jones has eliminated many of the technical terms in the agreement criticized in *Thomforde* and *Syverson*. While the Agreement is nevertheless scarcely a model of "plain English" draftsmanship, it adequately conveys the limitations that Ridinger accepted in exchange for enhanced severance pay. There also is no indication that any of the undertakings set forth in the Agreement were couched in terms too complicated for Ridinger to understand. *Oubre* consequently does not require this Court to set aside Ridinger's waiver.

In *Hodge*, the other case upon which Ridinger relies, the Second Circuit considered an agreement that failed to comply with several aspects of the OWBPA other than the requirement that a waiver agreement be drafted "in a manner calculated to be understood." The *Hodge* court held that the employer could not evade the OWBPA on the theory that the employee had ratified the agreement by accepting the employer's payment. *Hodge*, 157 F.3d at 167 (citing *Oubre*, 522 U.S. at 422, 118 S.Ct. 838). In this case, because Dow Jones does not advance any such argument, *Hodge* is inapplicable.

## V. *Conclusion*

By entering into the Agreement, Ridinger waived his right to bring suit under the ADEA and state and local anti-discrimination laws. Since the waiver does not offend the OWBPA, Dow Jones' motion, (Docket No, 8), must be granted and this case dismissed. The Clerk of the Court is therefore respectfully requested to close this case.

SO ORDERED.