10-1771-cv
Ridinger v. Dow Jones & Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2010

(Argued:  November 18, 2010                    Decided: July 11, 2011)

Docket No. 10-1771-cv

_____

THOMAS RIDINGER,

Plaintiff-Appellant,

- v. -

DOW JONES & COMPANY INC.,

Defendant-Appellee.
_____

Before:  KEARSE, McLAUGHLIN, and LIVINGSTON, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York, Frank Maas, Magistrate Judge, summarily dismissing age discrimination complaint as barred by separation agreement entered into by plaintiff in connection with the termination of his employment.  See 717 F.Supp.2d 369 (2010).

Affirmed.

JONATHAN BOBROW ALTSCHULER, New York, New York, submitted a brief for Plaintiff-Appellant.

KEVIN G. CHAPMAN, Princeton, New Jersey, for

KEARSE, Circuit Judge:

Plaintiff Thomas Ridinger appeals from a judgment of the United States District Court for the Southern District of New York, Frank Maas, Magistrate Judge, dismissing his complaint against his former employer, defendant Dow Jones & Company Inc. ("Dow Jones") seeking monetary and equitable relief for alleged age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and state law. The magistrate judge, before whom the parties had consented to proceed for all purposes, granted summary judgment dismissing the complaint on the basis of a separation agreement entered into by Ridinger and Dow Jones in connection with the termination of his employment, in which Ridinger agreed to waive and release all claims, expressly including claims under the ADEA, that he might have against Dow Jones through the date of the agreement. On appeal, Ridinger contends principally that the separation agreement is unenforceable, arguing that its provisions do not comply with requirements of the Older Workers Benefit Protection Act ("OWBPA"), see 29 U.S.C. § 626(f), and applicable Equal Employment Opportunity Commission ("EEOC") regulations, or at least that there were genuine issues of material fact as to whether the separation agreement met those requirements. For the reasons that follow, we reject his contentions and affirm the judgment of the district court.

## I. BACKGROUND

We describe the record in the light most favorable to Ridinger as the party against whom summary judgment was granted, drawing all reasonable inferences in his favor. The following facts are undisputed. Ridinger was first employed by Dow Jones in 2001. In December 2007, when he was a 62-year-old photo editor at Dow Jones's SmartMoney magazine, his employment was terminated. Ridinger was granted a severance package that included 20 weeks' salary and other benefits, in exchange for which he signed a Separation Agreement and General Release ("Separation Agreement" or "Agreement"). Ridinger received all of the benefits promised to him in the Agreement.

### A. The Separation Agreement and Ridinger's Complaint

Ridinger commenced the present action against Dow Jones in 2009 for alleged violation of the ADEA, asserting that although Dow Jones had informed him that the reason for his termination was that his position was being eliminated, that explanation was a pretext for age discrimination, as his position remained extant and was filled by a younger employee. Dow Jones moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b) and 12(d) on the ground that this action is barred by Ridinger's voluntary execution of the Separation Agreement, in which he waived and released his present claims.

The Separation Agreement, which was attached to the Dow Jones motion, defined Ridinger as "Employee" and Dow Jones as "the Company"; its most relevant terms are set out in ¶ 4, entitled "**Waiver of claims against Employer**," which provides in part as follows:

3

(a) Employee, in exchange for the payments and other consideration embodied in this Agreement, waives, releases and forever discharges the Company . . . from all claims, causes of action, [or] lawsuits . . . which Employee may now or hereafter have against the Company from the beginning of time through the date of this Agreement, including but not limited to: (i) any claim or cause of action arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act (the "ADEA"), . . . and any other common law, federal, state or local law prohibiting discrimination or limiting an employer's right to terminate employees . . . . **Nothing in this Agreement shall limit or restrict Manager's** [sic] **right under the ADEA to challenge the validity of this Agreement in a court of law. This waiver and release does not apply to any claim that may arise under the ADEA after the date that Employee signs this Agreement.**

(b) Employee warrants that he has not filed, and agrees that he will not file or cause to be filed, any action, suit, or claim with any federal, state or local court relating to any claim within the scope of this paragraph 4, unless such a covenant not to sue is invalid under applicable law, in which case this sub-paragraph (b) shall be stricken from this Agreement, but all other provisions shall remain in full force.

(Separation Agreement ¶¶ 4(a) and (b) (emphasis in original).) Subparagraph (d), entitled "Limitation on Promise Not to Sue," provides in pertinent part that

[n]otwithstanding the agreements and obligations contained in paragraph[] 4(b) . . . above, Employee understands that he retains the right to file charges with a government agency and to participate in an investigation or litigation initiated by a government agency, without penalty or obligation to the Company under this Agreement. Employee further understands that he retains the right to bring a legal action to enforce the terms of this Agreement or to challenge the validity of this Agreement without penalty or obligation to the Company under this Agreement (except that the benefits to Employee provided in this Agreement may not apply if the Agreement is deemed to be invalid). Employee further understands that, under the law, the obligations to repay money received and to pay the Company's damages and costs provided for in paragraph 4(b) in the event that Employee breaches his promise not to file a suit over released claims do not apply to claims under the ADEA. Therefore, the financial obligations of paragraph 4(b) would not apply to a suit filed solely under the ADEA, but Employee nevertheless understands that the waivers and releases contained in paragraph 4(a) still apply to ADEA claims and that he has waived all ADEA claims as part of this Agreement and that in any suit brought under the ADEA, Employee would not be entitled to any damages or other relief unless this Agreement and the waivers contained in it

4

were deemed to be unlawful or otherwise invalid.

(Id. ¶ 4(d).)

B. The Decision of the District Court

Pursuant to Rule 12(d), the district court treated Dow Jones's motion to dismiss as one for summary judgment because it relied on matters outside the complaint, to wit, the Separation Agreement. Ridinger submitted a memorandum of law in opposition to Dow Jones's motion but did not submit an affidavit or any factual matter. Citing principally Thomforde v. IBM, 406 F.3d 500 (8th Cir. 2005) ("Thomforde"), and Syverson v. IBM, 472 F.3d 1072 (9th Cir. 2007) ("Syverson"), Ridinger argued that

> [w]hile it is true that Mr. Ridinger executed the document attached to the moving papers, the courts and EEOC have consistently taken the position that the language in the waiver part of those agreements do not in this case waive Mr. Ridinger's right to commence the instant action.

(Plaintiff's Brief in Opposition to Motion To Dismiss Based on Waiver of Claims, dated September 30, 2009 ("Ridinger Mem."), at 4.) Ridinger cited an online EEOC "pamphlet" stating that waivers of ADEA claims in severance agreements, in order to be enforceable, must be "'written in a manner calculated to be understood.'" (Ridinger Mem. at 4 (quoting EEOC, UNDERSTANDING WAIVERS OF DISCRIMINATION CLAIMS IN EMPLOYEE SEVERANCE AGREEMENTS at ¶ IV.6.).) See http://www.eeoc.gov/policy/docs/qanda_ severance-agreements.html (last visited May 31, 2011). With respect to the Separation Agreement in the present case, Ridinger's memorandum suggested that the relevant provisions were unduly lengthy (see, e.g., Ridinger Mem. at 3 ("Sub-section (a) contains 25 lines and over 300 words"); id. ("Sub-section (b) contains 11 lines")), and were confusing because

> in paragraph 4 of the Dow Jones Separation Agreement and General Release

captioned Waiver of Claims against Employer there is an inconsistency. In sub-paragraph (a) the employee, in this case, Mr. Ridinger, waives his right to sue and then in bold face the Agreement states that the waiver and release does not apply to any claim that may arise under the ADEA after the employee signs the Agreement. There are similar instances in sub-paragraphs b and d.

(Ridinger Mem. at 5.) Ridinger did not identify the "similar instances" of alleged inconsistency in ¶¶ 4(b) and 4(d).

In a Memorandum Decision and Order dated April 13, 2010, published at 717 F.Supp.2d 369, the district court rejected Ridinger's arguments and granted the motion to dismiss. The district court noted that the separation agreements dealt with by the courts in Thomforde and Syverson had used technical legal terms that were not easily understood or parsed by a layperson, and in combinations that could easily be misunderstood, in that they "required an employee to release all ADEA claims, but also said that the employee's covenant not to sue did not apply to actions 'based solely under the ADEA.' Syverson, 472 F.3d at 1082; Thomforde, 406 F.3d at 502." 717 F.Supp.2d at 371. Thus, the district court noted, the Thomforde and Syverson courts concluded that a lay employee, without a clear understanding of the difference between a release and a covenant not to sue, might well believe that the agreement left him free to bring an action against the employer under the ADEA.

The district court found the language of the Separation Agreement to be "a far cry" from the language challenged in Thomforde and Syverson, noting that the Agreement "clearly states that Ridinger's waiver extends to ADEA claims, but that he retains the right to challenge the validity of the Agreement containing the waiver." 717 F.Supp.2d at 373. The court concluded that the Agreement here "accurately sets forth Ridinger's contractual and statutory rights." Id.

In addition, having noted Ridinger's claim that there was "an inconsistency in the

6

Agreement between the waiver of his right to sue and the subsequent language indicating that his release 'does not apply to any claim that may arise under the ADEA after the employee signs the Agreement,'" id. (quoting Ridinger Mem. at 5), the court found no inconsistency, stating that

> the OWBPA expressly requires, as one of the eight requirements for an effective waiver, that an employee "not waive rights or claims that may arise after the date the waiver is executed." . . . Language that tracks the OWBPA obviously cannot be the basis for a claim that the Agreement is unenforceable.

717 F.Supp.2d at 373 (quoting 29 U.S.C. § 626(f)(1)(C).). The district court concluded that the Separation Agreement

> adequately conveys the limitations that Ridinger accepted in exchange for enhanced severance pay. There also is no indication that any of the undertakings set forth in the Agreement were couched in terms too complicated for Ridinger to understand.

717 F.Supp.2d at 374.

The court also noted that--although not mentioned by Ridinger in his opposition to Dow Jones's motion--the Agreement contains an "apparent word processing error," 717 F.Supp.2d at 373, in providing that nothing limits or restricts the right of the "'Manager,'" a term not defined in the Agreement, to challenge the validity of the Agreement, id. at 372. The court found this flaw inconsequential because

> the Agreement elsewhere makes clear that the "Employee . . . retains the right to bring a legal action to . . . challenge the validity of th[e] Agreement . . . (except that the benefits to Employee provided in th[e] Agreement may not apply if the Agreement is deemed to be invalid)." [Separation Agreement ¶ 4(d).] Accordingly, even if Ridinger thought that the term "Manager" referred to Dow Jones, the Agreement correctly informed him of his rights. Moreover, if Ridinger interpreted the term "Manager" to refer to himself, the Agreement twice stated the applicable law correctly. This apparent word processing error therefore does not affect the enforceability of the Agreement.

Id. at 372-73.

Judgment was entered dismissing the complaint, and this appeal followed.

## II.  DISCUSSION

On appeal, Ridinger contends primarily that the Separation Agreement is unenforceable because it does not comply with the OWBPA requirement that it be written in a manner calculated to be understood.  He also contends that the Agreement is unenforceable because it failed to advise him to consult an attorney prior to signing and that there exist disputed issues of fact that should have precluded the grant of summary judgment.  For the reasons that follow, we find no basis for reversal.

A.  The OWBPA

The ADEA, enacted in 1967, generally forbids an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In 1990, Congress enacted the OWBPA, amending the ADEA, to "impose[] specific requirements for releases covering ADEA claims," Oubre v. Entergy Operations, Inc., 522 U.S. 422, 424 (1998).

Added as § 7(f) of the ADEA, the OWBPA provides in part that

> [a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary. . . .  [A] waiver may not be considered knowing and voluntary unless at a minimum--
>
> > (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be

8

understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under [the ADEA];

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or

(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired[.]

29 U.S.C. § 626(f)(1)(A)-(G) (emphases added).

The OWBPA "stricture[s] on waivers" are "strict" and "unqualified." Oubre, 522 U.S. at 427. "An employee may not waive an ADEA claim unless the employer complies with the statute," id. (internal quotation marks omitted); an employee's retention of the moneys paid to him pursuant to a separation agreement that fails to meet the minimum requirements of the OWBPA does not ratify the agreement, see id. at 425-28; see also Hodge v. New York College of Podiatric Medicine, 157 F.3d 164, 167 (2d Cir. 1998) (employee's acceptance of continued employment and benefits for one year did not ratify a separation agreement that did not meet the minimum requirements of the

OWBPA).

Regulations promulgated by the EEOC repeat and reflect these strictures. See 29 C.F.R. § 1625.22(b). For example, with respect to the "written in a manner calculated to be understood" requirement imposed by § 626(f)(1)(A) (the "clarity requirement"), regulations cited by Ridinger state in part that

> [w]aiver agreements must be drafted in plain language geared to the level of understanding of the individual party to the agreement or individuals eligible to participate. Employers should take into account such factors as the level of comprehension and education of typical participants. Consideration of these factors usually will require the limitation or elimination of technical jargon and of long, complex sentences.
>
> (4) The waiver agreement must not have the effect of misleading, misinforming, or failing to inform participants and affected individuals.

29 C.F.R. §§ 1625.22(b)(3) and (4).

The burden of proving that a claimed "waiver was knowing and voluntary" within the meaning of the OWBPA is on "the party asserting the validity of [the] waiver." 29 U.S.C. § 626(f)(3). Section 626(f)(1)(A)'s focus on both the "individual" participating employee and "the average individual" who is eligible to participate may warrant both a particularized and a generalized assessment of the agreement's waiver provisions. However, where the individual employee has not presented the district court with any evidence from which to infer that his own comprehension level was below that of the average eligible employee, the employer carries his burden with respect to the clarity requirement if the language of the waiver agreement is calculated to be understood by the average eligible employee. While evidence as to an individual employee's comprehension level might present an issue of fact to be tried, the matter of whether the agreement's language is calculated to be understood by the average eligible employee is essentially an issue of law.

In Thomforde and Syverson, the Eighth and Ninth Circuits, respectively, concluded that the language of IBM documents partially titled "General Release and Covenant Not to Sue" (the "IBM agreements") failed to meet § 626(f)(1)(A)'s clarity requirement. In each IBM agreement, the employee agreed to a release of "'all claims'"--including "'claims arising from the [ADEA]'"--and gave a "'covenant not to sue,'" which included an "'agree[ment] . . . never [to] institute a claim of any kind against IBM . . . related to [his] employment with IBM'"; however, each agreement also provided that "'[t]his covenant not to sue does not apply to actions based solely under the [ADEA].'" Thomforde, 406 F.3d at 501-02 (quoting IBM agreement); Syverson, 472 F.3d at 1081-82 (same). Reasoning that a lay employee could easily read these provisions as allowing the employee to bring an action under the ADEA, the Thomforde and Syverson courts concluded that the IBM agreements were not written in a manner calculated to be understood by the relevant employees, as required by § 626(f)(1)(A), and were thus unenforceable under the OWBPA. See Thomforde, 406 F.3d at 504; Syverson, 472 F.3d at 1087.

B.  Ridinger's Lack-of-Clarity Challenge

As indicated in Part I.B. above, Ridinger opposed Dow Jones's motion in the district court solely as a matter of law, without suggesting that there was any factual issue to be resolved. He argued that Dow Jones's motion should be denied on the basis of the decisions in Thomforde and Syverson, apparently equating the language in the Separation Agreement with the language in the IBM agreements that were at issue in those cases. (See Ridinger Mem. at 4.) The district court, however, correctly noted that the language of the Separation Agreement signed by Ridinger is quite different from that in the IBM agreements considered in Thomforde and Syverson. Although ¶ 4 of

11

the Separation Agreement uses the terms "waiver," "release," and "covenant not to sue," it does not use or combine them in the manner found to be confusing in the IBM agreements. Paragraph 4 of the Separation Agreement refers to covenants not to sue only in stating that Ridinger agrees not to sue Dow Jones as provided in that paragraph "unless such a covenant not to sue is invalid under applicable law." (Separation Agreement ¶ 4(b).) Further, unlike in Thomforde and Syverson--where lay readers could plausibly read the phrase "[the] covenant not to sue does not apply to actions based solely under the [ADEA]" to mean that they could bring actions based solely under the ADEA despite having released the employer from all ADEA claims, see Thomforde, 406 F.3d at 502-03 (internal quotation marks omitted); see also Syverson, 472 F.3d at 1083-84--the Separation Agreement here clearly explains that it is only the "financial obligations" triggered by a breach of Ridinger's promise not to sue that "would not apply to a suit filed solely under the ADEA, but . . . that the waivers and releases contained in paragraph 4(a) still apply to ADEA claims." Separation Agreement ¶ 4(d) (emphasis added).

In this Court, Ridinger argues that while the language at issue in other cases "may" have been different (Ridinger brief on appeal at 15), the Separation Agreement is unenforceable because "the waiver section . . . contains technical jargon, complex sentences that are written in a manner not calculated to be understood by the average individual" (id. at 15-16). Ridinger does not specify what "jargon" he found confusing; his only nonconclusory argument in support of his "not calculated to be understood" contention is based on the "word processing error" noticed by the district court, 717 F.Supp.2d at 372-73 (pointing out that ¶ 4(a) of the Separation Agreement states that nothing in the Agreement "limit[s] or restrict[s] Manager's [sic] right under the ADEA to challenge the validity of this Agreement in a court of law" (emphasis and internal quotation marks omitted))--

which Ridinger, in his opposition to the motion, had not contended was confusing. Focusing on that clause in his brief on appeal, Ridinger argues as follows:

> What that provision states is that the Manager can under ADEA challenge the validity of the Agreement. Since Dow Jones used boiler plate language in the Agreement and because of the responsibilities that Ridinger had as a photo editor, it is reasonable to conclude that sub-section might give him the right to challenge the validity of the Agreement de novo in court.

(Ridinger brief on appeal at 12 (emphasis added).) As a basis for claiming confusion, this argument is meritless. That boilerplate error could not have misled Ridinger to believe that he had the right to challenge "the validity" of the Agreement in court because the Agreement in fact expressly gave him that right--which he acknowledged: "Employee . . . understands that he retains the right to bring a legal action to . . . challenge the validity of this Agreement" (Separation Agreement ¶ 4(d) (emphases added)). And Ridinger has pointed to nothing in the Separation Agreement that could have led him to believe he retained the right to bring an action alleging age discrimination in violation of the ADEA, rather than simply an action challenging the validity of the Separation Agreement.

Finally, although it is not clear whether Ridinger intended to pursue here the argument he made to the district court--that the Separation Agreement was confusing because of what he called "an inconsistency" between the language stating that "Ridinger[] waives his right to sue" and the subsequent language "stat[ing] that the waiver and release does [sic] not apply to any claim that may arise under the ADEA after the employee signs the Agreement" (Ridinger Mem. at 5)--we note that that argument too is meritless in light of the discrete time periods specified. The Agreement expressly provides that Ridinger waives his right to sue only with respect to claims "through the date of this Agreement" (Separation Agreement ¶ 4(a)); that provision plainly is not inconsistent with the provision that he does not waive his right to sue with respect to "any claim that may arise under the

13

ADEA _after_ the date that Employee signs this Agreement" (_id_. (other emphasis omitted)).

In sum, having reviewed the Separation Agreement _de novo_ in light of the record before the district court, which, as discussed in Part II.C. below, included no suggestion by Ridinger that there were any factual issues to be resolved as to such matters as his particular level of comprehension, we conclude that Dow Jones met its burden of showing that the Agreement was written in a manner calculated to be understood by the relevant Dow Jones employees.

C. Ridinger's Other Arguments

Ridinger makes two additional arguments on this appeal: (1) that summary judgment should have been denied because there are issues of fact to be tried, and (2) that the Separation Agreement is unenforceable because he was not advised in writing, as required by OWBPA, to consult with an attorney before signing the Agreement, _see_ 29 U.S.C. § 626(f)(1)(E). We see no basis for reversal.

Neither of these arguments was made to the district court. We normally will not disturb a judgment on the basis of an argument that was not made to the district court. _See_, _e.g._, Leyda v. AlliedSignal, Inc., 322 F.3d 199, 207 (2d Cir. 2003); Gilbert v. Frank, 949 F.2d 637, 640 (2d Cir. 1991). "[T]his bar to raising new issues on appeal is not absolute," but "it may be overcome only when necessary to avoid manifest injustice." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir.) (internal quotation marks omitted), cert. denied, 498 U.S. 846 (1990). We see no potential injustice here.

Ridinger acknowledges that factual matters--such as his "education and business experience, his role in deciding the terms of the agreement, . . . and whether he had a fair opportunity

14

to consult with counsel"--were not presented to the district court. (Ridinger brief on appeal at 18.) Dow Jones, in moving to dismiss on the basis of the Separation Agreement, a "matter[] outside the pleadings," Fed. R. Civ. P. 12(d), expressly invoked Rule 12(d), which required, unless the Agreement was excluded by the court, that the motion be "treated as one for summary judgment," id. If Ridinger believed there were genuine issues of material fact to be tried, so as to preclude summary judgment, it was incumbent on him to so inform the district court and to do so by proffer of admissible evidence, see, e.g., ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir.) ("conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment"), cert. denied, 552 U.S. 827 (2007). He did not. Indeed, even in this Court, Ridinger mentions the above factual matters only in the heading of the final point in his brief and provides no elaboration, no reference to evidence (admissible or inadmissible) and, hence, no reason to believe that there should have been a trial.

Nor are we persuaded that we should entertain the claim that the Separation Agreement is unenforceable on the ground that Ridinger was not advised to consult an attorney prior to signing the Agreement. In the Agreement, Ridinger "**ACKNOWLEDGE[D]**," inter alia, that

> **[t]he Company has advised me to consult with an attorney prior to signing this Agreement, and I have had the opportunity to consult with an attorney prior to signing this Agreement.**

(Separation Agreement ¶ 6(e) (emphasis in original).) We see no injustice in refusing to allow him to introduce on appeal the new contention that he was not so advised.

## CONCLUSION

We have considered all of Ridinger's arguments that are properly before us and have

15

found them to be without merit.  The judgment of the district court is affirmed.